Docket No. 79106–Agenda 2–January 1996.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. $1,124,905 U.S. CURRENCY AND ONE 1988 CHEVROLET ASTRO VAN (Jesus Mena, Appellant).

Opinion filed September 18, 1997.

JUSTICE NICKELS delivered the opinion of the court:

In this appeal, we examine the forfeiture of $1,124,905 police discovered in a van Jesus Mena was driving. The State initiated civil forfeiture proceedings in the circuit court of McLean County by filing a complaint against the currency and the van pursuant to the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 
et seq
. (West 1994)). In response, Jesus filed a claim and verified answer and subsequently an amended answer, contesting only the forfeiture of the currency. In his answers, Jesus declined to respond to certain interrogatories required by the Act (725 ILCS 150/9(D) (West 1994)), asserting his fifth amendment privilege. On the State's motion, the circuit court struck Jesus' answers, finding that Jesus lacked standing to contest the forfeiture. Jesus declined to replead and the circuit court entered an order of default and an order of forfeiture. The appellate court declined to determine whether Jesus possessed standing, and instead found it dispositive that the State had established probable cause to forfeit the property. 269 Ill. App. 3d 952. We granted Jesus' petition for leave to appeal. 155 Ill. 2d R. 315.

BACKGROUND

On July 9, 1993, the Illinois State Police seized a van containing $1,124,905. Pursuant to the Drug Asset Forfeiture Procedure Act (725 ILCS 150/5 (West 1994)), the police notified the State's Attorney for McLean County of the seizure of the property. On August 19, 1993, the drug enforcement prosecutor for the McLean County State's Attorney's office filed a complaint for forfeiture in the circuit court. The complaint set forth the following allegations:

“1. That on July 9, 1993, a trooper of the Illinois State Police stopped to assist motorists standing outside an apparently stranded 1988 Chevrolet Astro Van, VIN 1GNCM15Z1JB169536, Illinois registration tag SVG543;

2. That said stop occurred on Interstate 55 southbound at or near milepost 185 in McLean County, Illinois;

3. That Jesus Mena, Elena B. Mena and a one year old child were the motorists found outside the vehicle;

4. That following said stop, the trooper and a back-up learned that the automobile [was] registered to Melvin J. DeJesus;

5. That following said stop, the troopers conducted a lawful search of the vehicle;

6. That during the course of said search the troopers found compartments built into the floor of the vehicle;

7. That the troopers found the sum of $1,124,905.00 U.S. Currency in the compartment of the vehicle.

8. That the U.S. Currency was furnished or intended to be furnished in exchange for a substance, or the proceeds thereof, in violation of the Controlled Substances Act;

9. That the troopers seized the above-captioned property which is subject to forfeiture based upon the statutory provisions of 720 ILCS 570/505 (1993) as amended.”

After filing the complaint for forfeiture, the State sent a copy of the complaint as notice of the forfeiture to Jesus and Elena Mena, and to Melvin DeJesus. The State also provided notice to other interested parties by publication. In the affidavit for publication, the State's Attorney stated that “I believe Jesus and Elena Mena and Melvin DeJesus to be the owner(s) of the property” and that “there may be other owners or interested parties who, after due and diligent inquiry, I have been unable to ascertain addresses for.” All the notices further provided that an 
answer
 contesting the forfeiture must be filed within 45 days at the risk of default.

Only Jesus Mena filed a claim and answer contesting the forfeiture. In his answer, Jesus Mena contested forfeiture of the currency only.

The State moved to strike the answer on grounds that the answer did not comply with the requirements of the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 
et seq
. (West 1994)). Specifically, the motion challenged Jesus' answer on grounds that the answer did not specify the extent of his interest in the property as required by section 9(D)(iii) of the Act (725 ILCS 150/9(D)(iii) (West 1994)); that the answer did not set forth the date, identity of transferor and circumstances of his acquisition of the property as required by section 9(D)(iv) (725 ILCS 150/9(D)(iv) (West 1994)); that the answer did not identify any defenses contained in section 8 of the Act that Jesus intended to rely on as required by section 9(D)(vi) (725 ILCS 150/9(D)(vi) (West 1994)); and that the answer did not include all essential facts supporting each allegation as required by section 9(D)(vii) (725 ILCS 150/9(D)(vii) (West 1994)). The State's motion to strike was granted and Jesus was granted leave to file an amended answer satisfying the statutory requirements.

In the time allowed for filing the amended answer, Jesus instead filed a motion to strike the State's complaint and a motion to make the complaint more definite and certain. The thrust of both motions was an attack on the factual sufficiency of the allegations in the complaint for forfeiture. Jesus challenged the allegations contained in paragraphs five and eight in the complaint, requesting facts to support the allegations that the search was lawful and that the currency was furnished or intended to be furnished for a controlled substance.

The trial court denied Jesus' motion to strike the complaint. The trial court granted in part Jesus' motion to make the complaint more definite by requiring the State to amend its allegation concerning the lawfulness of the search to include the fact that the search was pursuant to the consent of Jesus. The trial court found no problem with the allegation in paragraph eight and therefore accepted the State's amended complaint.

Jesus subsequently filed a timely amended claim and answer. In his amended answer, Jesus claimed exclusive ownership of the currency. Jesus refused, however, to allege the date and circumstances of his acquisition of this ownership interest, asserting his fifth amendment privilege. The trial court granted the State's subsequent motion to strike the amended answer, finding that the allegations in the answer did not satisfy the requirements of the statute necessary to show standing.

Jesus elected to stand on his answer. The State then filed a motion seeking an order of default and forfeiture. Neither Jesus nor his attorney appeared at the hearing on the motion. In support of the motion, the State for the first time submitted the affidavit of Illinois State Police Sergeant Mike Snyders. In his affidavit, Sergeant Snyders recounted the circumstances surrounding his seizure of the van and currency.

In his affidavit, Sergeant Snyders states that he is the coordinator of the Illinois State Police Highway Interdiction Program and that he has extensive training and experience in drug interdiction. On July 9, 1993, he observed a van with its hood open on the side of the highway and stopped to assist. At the van, he found a man and woman, later identified as Jesus and Elena Mena, and a small child. Jesus indicated that the van had overheated.

Sergeant Snyders then asked Jesus if the van belonged to him. Jesus responded that the van belonged to a friend, but he did not know the friend's name or how to get in touch with him. Jesus presented Sergeant Snyders with the van's title, which listed the owner as Melvin J. DeJesus. Jesus could not give the owner's address or phone number or explain how he was supposed to return the van. Sergeant Snyders' affidavit further states that Jesus and Elena gave conflicting stories regarding their destination. Jesus reported that they were heading to St. Louis to look for work. Elena reported they were heading to Texas. Sergeant Snyders characterized Jesus and Elena as appearing nervous and scared.

According to the affidavit, Sergeant Snyders told Jesus that he was very suspicious about the story. Sergeant Snyders then asked Jesus if he had any large amounts of cash in the van. Jesus laughed and said that he did not have any large amounts of cash and he was not transporting anything for anyone else. Jesus then gave consent for Sergeant Snyders and a backup officer to search the van.

During the search of the van, Sergeant Snyders observed evidence that the van had been altered to create a compartment in the floor. Sergeant Snyders noticed that the spare tire had been removed from the outside of the van and the undercarriage had been sprayed with a black, oily substance. Sergeant Snyders also noticed that inside the van the floor was flat, but the exterior showed a tapered shape. In addition, the center bench showed evidence it had been removed, including fasteners that did not match and carpeting that did not fit properly.

Sergeant Snyders then pulled back the carpeting and discovered a layer of plywood and a thin metal floor with a trap door. Sergeant Snyders discovered, inside the trap door, a compartment full of cash bundles. There were 112 cellophane and duct tape bundles with the number 10 written on them and one bundle with the number five written on it. A later count revealed a total of $1,124,905.

Sergeant Snyders' affidavit further provides that Jesus, Elena and the child were transported from the scene to the police station. During an interview at the station, Jesus admitted that DeJesus had hired him to transport the van and had given him money for traveling expenses. Jesus denied any knowledge of the trap door or its contents. Jesus further stated that DeJesus gave him two phone numbers to call once he arrived in El Paso, Texas, and he was to receive $3,500 payment for delivery of the van.

Jesus agreed to call DeJesus from the police station while an officer listened to the phone call. When Jesus placed the call, a man answered and asked Jesus if there was a problem. Jesus told the man that the police had found the money. The man said he would get in touch with DeJesus and told Jesus to call back. Jesus called back 15 minutes later and DeJesus answered the phone. After Jesus related the events surrounding the discovery of the money, DeJesus told him to “tolerate the whip and keep your mouth shut.”

Sergeant Snyders' affidavit also detailed the course of his follow-up investigation. Sergeant Snyders obtained Melvin DeJesus' photograph from the Secretary of State and traveled to Chicago to locate and interview DeJesus, the registered owner of the van. The occupants at the address listed on the title and registration told Snyders that they did not know a Melvin DeJesus or recognize his picture. In addition, Sergeant Snyders learned that the social security number listed on DeJesus' driver's license was registered to a Melvin DeJesus, age 11 years.

Relying on the information contained in the affidavit, the trial judge entered an order forfeiting the van and currency. Jesus appealed from the forfeiture order, arguing that the trial court erred in: (1) denying his motion to strike the complaint for forfeiture; (2) finding probable cause to believe that the currency was traceable to an illegal drug transaction; and (3) striking his answer and ruling he did not have standing to contest the forfeiture.

The appellate court held that Jesus waived his objection to the State's complaint by pleading over. 269 Ill. App. 3d at 956. In so finding, the appellate court rejected Jesus' contention that because his answer had been stricken, it was as if his answer had not been filed and therefore he had not waived any objection to the complaint. 269 Ill. App. 3d at 956. The appellate court declined to determine whether Jesus had standing to contest the forfeiture, instead finding that regardless of whether Jesus could demonstrate standing, the State had satisfied its burden for forfeiture. 269 Ill. App. 3d at 955-62.

For reasons that follow, we reverse the order forfeiting the currency and remand this cause to the circuit court. Section I examines the relevant forfeiture provisions of the Illinois Controlled Substances Act (720 ILCS 570/505 (West 1994)). Section II reviews the procedures for judicial forfeiture set forth in the Drug Asset Forfeiture Procedure Act (720 ILCS 570/100 
et seq
. (West 1994)). Section III analyzes the issue of whether Jesus possesses standing to contest the forfeiture of the currency. Section IV considers the effect of asserting the fifth amendment privilege in response to the statutory interrogatories contained in the Drug Asset Forfeiture Procedure Act. Section V first determines that Jesus did not waive his challenge to the State's complaint. Section V then examines the appropriate standard for pleading probable cause for forfeiture, concluding that the State's complaint fails to state a cause of action. Accordingly, the appropriate relief is to remand the cause to the circuit court for further proceedings.

ANALYSIS

I. Controlled Substances Act

The State sought forfeiture of the property pursuant to section 505 of the Controlled Substances Act (720 ILCS 570/505 (West 1994)). We have previously examined section 505(a)(3), which provides for the forfeiture of vehicles and other conveyances “used *** in any manner to facilitate” a drug violation. 720 ILCS 570/505(a)(3) (West 1994); see 
People ex rel. Waller v. 1989 Ford F350 Truck
, 162 Ill. 2d 78 (1994); 
People v. One 1986 White Mazda Pickup Truck
, 162 Ill. 2d 67 (1994). We determined that the term “facilitate” requires that the conveyance make the possession of the controlled substance in some way “ `easier or less difficult' ” in order to support forfeiture. 
One 1986 White Mazda Pickup Truck
, 162 Ill. 2d at 69; 
People v. 1946 Buick
, 127 Ill. 2d 374, 377 (1989). Jesus, however, does not contest the forfeiture of the van, instead only contesting the forfeiture of the currency.

The State sought forfeiture of the currency pursuant to section 505(a)(5) of the Act (720 ILCS 570/505(a)(5) (West 1994)). Section 505(a)(5) provides for the forfeiture of:

“everything of value furnished, or intended to be furnished, in exchange for a substance in violation of this Act, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used, or intended to be used, to commit or in any manner to facilitate any violation of this Act.” 720 ILCS 570/505(a)(5) (West 1994).

Thus, three categories of property are subject to forfeiture pursuant to section 505(a)(5):

(1) anything of value which is furnished or intended to be furnished in exchange for a controlled substance;

(2) all proceeds that can be traced to the exchange of a controlled substance; and

(3) all moneys, negotiable instruments, and securities used or intended to be used in any manner to facilitate a controlled substances violation.

The Controlled Substances Act further provides that property subject to forfeiture may be seized by any peace officer without judicial process where the seizure is reasonable and supported by probable cause. See 720 ILCS 570/505(b)(4) (West 1994). In the event of such a seizure, forfeiture proceedings are to be instituted pursuant to the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 
et seq
. (West 1994)). 720 ILCS 570/505(c) (West 1994).

II. Drug Asset Forfeiture Procedure Act

In an effort to deter violations of the Controlled Substances Act (720 ILCS 570/100 
et seq
. (West 1994)) and the Cannabis Control Act (720 ILCS 550/1 
et seq
. (West 1994)), the General Assembly enacted the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 
et seq
. (West 1994)) establishing uniform procedures for the seizure and forfeiture of drug related assets. The Act is to be interpreted in light of the federal forfeiture provisions contained in 21 U.S.C. §881 (1994) as interpreted by the federal courts, except to the extent that the provisions expressly conflict. 720 ILCS 550/2 (West 1994). In addition, the Act is to be liberally construed to effectuate its remedial purpose. 725 ILCS 550/13 (West 1994).

Where the property seized is “non-real property that exceeds $20,000 in value excluding the value of any conveyance, or is real property,” the Act provides for a judicial 
in rem
 procedure. 725 ILCS 150/9 (West 1994). The State's Attorney initiates the action by filing a verified complaint for forfeiture of the property. 725 ILCS 150/9(A) (West 1994). The Act provides that only an owner or interest holder may file an answer asserting a claim against the property. 725 ILCS 150/9(C) (West 1994). In addition, the answer must contain certain information, including the circumstances surrounding the claimant's acquisition of the property. 725 ILCS 150/9(D) (West 1994).

The Act provides that the State shall have the initial burden to show the existence of probable cause for forfeiture of the property. 725 ILCS 150/9(G) (West 1994). Where the State satisfies its burden of establishing probable cause, then the burden shifts to the claimant to show by a preponderance of the evidence that the property is not subject to forfeiture. 725 ILCS 150/9(G) (West 1994). A claimant may satisfy this burden by establishing one of the innocent-owner defenses listed in the Act. 725 ILCS 150/8 (West 1994). During the probable cause portion of the proceeding, “the court must receive and consider, among other things, all relevant hearsay evidence and information.” 725 ILCS 150/9(B) (West 1994). During all other portions of the proceeding, the law of evidence relating to civil actions applies. 725 ILCS 150/9(B) (West 1994).

III. Standing

We find it appropriate to first consider whether Jesus has standing to contest the forfeiture of the currency. Relying on federal case law, the State argues that a claimant bears an initial burden to establish standing to contest the forfeiture. See, 
e.g
., 
United States v. $121,100 in United States Currency
, 999 F.2d 1503, 1505 (11th Cir. 1993). In order to satisfy this burden, the State argues, a claimant must file an answer that satisfies the statutory prerequisites listed in the Drug Asset Forfeiture Procedure Act (720 ILCS 150/9(D) (West 1994)). These prerequisites to standing include alleging facts supporting an ownership interest in the property. See 720 ILCS 150/9(D)(vii) (West 1994). Thus, the State maintains that the trial court properly struck Jesus' answer because it failed to allege specific facts establishing his standing.

The State further argues that a claimant may not assert his fifth amendment privilege against compulsory self-incrimination to avoid answering questions relating to standing. The State relies on 
United States v. Rylander
, 460 U.S. 752, 75 L. Ed. 2d 521, 103 S. Ct. 1548 (1983), where the Supreme Court noted that the fifth amendment privilege is not a substitute for evidence and may not be used to avoid meeting a burden of production. As a claimant bears the burden of production on the issue of his standing, he may not use the fifth amendment as an excuse for failing to prove his standing. See 
United States v. United States Currency & Coin
: $558,110
, 626 F. Supp. 517, 520 (S.D. Ohio 1985).

Jesus argues he demonstrated his standing to contest the forfeiture. Jesus relies on 
United States v. $38,570 in United States Currency
, 950 F.2d 1108, 1113 (5th Cir. 1992), where a claim of exclusive ownership coupled with the allegations in the State's complaint were found sufficient to confer standing to a claimant. Jesus notes that his answer asserted exclusive ownership of the property and the State's complaint alleges that the currency was recovered from a van in which Jesus was traveling. In addition, the State treated Jesus as an owner by sending him a copy of the complaint and listing him as an owner in the affidavit for publication.

Despite the parties' reliance on federal precedent, we believe that Illinois law controls whether an individual possesses standing to contest the forfeiture of property under the Act. The doctrine of standing, like the related doctrines of mootness, ripeness and justiciability, seeks to insure that courts decide actual controversies and not abstract questions. 
In re Marriage of Rodriguez
, 131 Ill. 2d 273, 279-80 (1989). The primary focus of the inquiry is whether a party has a real interest in the outcome of the controversy. 
In re Marriage of Rodriguez
, 131 Ill. 2d at 280. In Illinois, standing is part of the common law. However, federal principles of standing are grounded largely on the jurisdictional case and controversy requirements imposed by article III of the United States Constitution. 
United States v. 116 Emerson St
., 942 F.2d 74, 78 (1st Cir. 1991); see also 
United States v. $103,387.27
 in United States Currency
, 863 F.2d 555, 560 n.10 (7th Cir. 1988) (distinguishing between article III standing and statutory standing); 
United States v. $38,000 in United States Currency
, 816 F.2d 1538, 1544 (11th Cir. 1987) (same).

In 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462 (1988), this court rejected federal principles of standing. In 
Greer
, plaintiffs challenged an administrative agency's approval of mortgage financing relating to a housing project. The agency challenged plaintiff's standing, arguing that a plaintiff must demonstrate both prongs of the federal test for standing articulated in 
Association of Data Processing Service Organizations, Inc. v. Camp
, 397 U.S. 150, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970). The 
Data
 Processing
 test requires that a plaintiff challenging an administrative action demonstrate: (1) that the illegal action will cause the plaintiff to suffer injury in fact; and (2) that the interest asserted by the plaintiff lies within the zone of interest sought to be protected by the statute in question. 
Association of Data Processing Service Organizations, Inc
.
, 397 U.S. at 155-56, 25 L. Ed. 2d at 189, 90 S. Ct. at 830-31 (1970); see also 
Torres v. $36,256.80 United States Currency
, 25 F.3d 1154, 1158 (1994) (applying 
Data Processing
 test to determine standing under federal forfeiture statute).

This court in 
Greer
 rejected application of the 
Data Processing
 test for standing as needlessly restrictive. 
Greer
, 122 Ill. 2d at 492; see also 
Cussack
 v. Howlett
, 44 Ill. 2d 233, 236 (1969) (rejecting federal law as to ripeness). In so holding, this court recognized that state courts are more liberal in recognizing the standing of parties than the federal courts. 
Greer
, 122 Ill. 2d at 491. In addition, this court criticized the federal zone of interest test as confusing standing with the merits of the underlying suit. 
Greer
, 122 Ill. 2d at 492. Thus, the 
Greer
 court concluded that standing in Illinois requires only “some injury in fact to a legally cognizable interest.” 
Greer
, 122 Ill. 2d at 492; see also 
In re Estate of Burgeson
, 125 Ill. 2d 477, 486 (1988).

In 
Greer
, this court also rejected the defendant's underlying assumption that a plaintiff bears the burden of establishing standing. The 
Greer
 court explained that a plaintiff need not allege facts supporting standing because in Illinois standing is an affirmative defense. 
Greer
, 122 Ill. 2d at 494. Therefore, it was the defendant's burden to plead and prove lack of standing. 
Greer
, 122 Ill. 2d at 494.

We find no reason to depart from these principles when determining standing under the Drug Asset Forfeiture Procedure Act. The doctrine of standing is designed to preclude persons having no interest in a controversy from bringing suit, but it should not be an obstacle to the litigation of a valid claim. 
In re Marriage of Rodriguez
, 131 Ill. 2d at 280. In imposing a burden of proof on a claimant to prove ownership to satisfy standing, the federal courts have muddied the issue of standing with the merits of the underlying suit. Indeed, where the State seeks forfeiture of currency and alleges that the currency was furnished or intended to be furnished for drugs or the proceeds thereof, a basic allegation is who committed the act that makes the property forfeitable. In addition, ownership of the property is central to an innocent-owner defense.

We further note that the provisions of the Act are entirely consistent with the principles regarding standing articulated in 
Greer
. The Act explicitly lays out the respective burdens imposed on the State and the claimant at the forfeiture hearing. Section 9(G) provides that the State has the burden to establish probable cause, and if that burden is satisfied, then the burden shifts to the claimant to prove that his or her interest is not subject to forfeiture. In explicitly allocating these burdens, the Act does not place any initial burden on a claimant to prove his interest in the property.

The Act does provide that “[o]nly an owner of or interest holder in the property may file an answer asserting a claim against the property in the action in rem.” 725 ILCS 150/9(C) (West 1994). The Act further requires that the answer must set forth information relating to the claimant's acquisition of the property. See 725 ILCS 150/9(D)(i) through (D)(viii) (West 1994). However, the Act does not impose an initial burden on a claimant to prove these mandatory allegations. Instead, the Act contemplates that a claimant must prove these allegations to establish an innocent-owner defense. See 725 ILCS 150/8 (West 1994).

Thus, where a claimant files an answer contesting forfeiture of property under the Act, it is the State's burden to challenge the claimant's standing to contest the forfeiture. Furthermore, the State may successfully satisfy this burden only where the State can prove that the claimant has not suffered an injury in fact to a legally cognizable interest. In addition, the legally cognizable interest should be construed broadly to “include any *** recognizable legal or equitable interest in the property seized.” S. Rep. No. 225, 98th Cong., 2d Sess. 215 (1984).

The State may quickly dispose of frivolous claims by contesting a claimant's standing by motion. In 
Greer
, this court recognized that controversies regarding standing are best resolved by motions for summary judgment rather than judgments on the pleadings. 
Greer
, 122 Ill. 2d at 494. Indeed, a motion for summary judgment allows a party to demonstrate that particular allegations are a sham or that there is no issue of genuine fact regarding a party's standing. 
Greer
, 122 Ill. 2d at 494. On remand, the State may properly challenge Jesus' standing to contest the forfeiture.

IV. Privilege Against Self-Incrimination

In his amended answer, Jesus claimed exclusive ownership of the currency. Jesus refused, however, to allege the date and circumstances of his acquisition of this ownership interest, asserting his fifth amendment privilege against compulsory self-incrimination. The State does not contest a claimant's right to assert the fifth amendment privilege in the context of a forfeiture proceeding. See 
United States v. United States Coin & Currency
, 401 U.S. 715, 28 L. Ed. 2d 434, 91 S. Ct. 1041 (1971). However, the State argues that the fifth amendment privilege is not a substitute for evidence and may not be used as an excuse for failing to meet a burden of production. 
United States v. Rylander
, 460 U.S. 752, 75 L. Ed. 2d 521, 103 S. Ct. 1548 (1983). Therefore, the State argues that the trial court did not err in striking Jesus' answer because the answer asserted the fifth amendment privilege in response to the statutory interrogatories necessary to show standing.

We have determined that a claimant does not bear an initial burden of pleading and proving standing. The statutory requirements for an answer contained in section 9(D) do not represent any burden of proof on the issue of standing, but are merely a set of interrogatories to be answered by a claimant to expedite the proceedings. Therefore, Jesus' invocation of the fifth amendment does not serve as a basis for striking his answer because it is not being used to satisfy a burden of production on the issue of standing.

Although asserting a fifth amendment privilege in response to the interrogatories contained in the forfeiture statute is not grounds to strike an answer, a claimant may not decline to answer with impunity. It is “the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties in civil actions when they refuse to testify in response to probative evidence offered against them.” 
Baxter v. Palmigiano
, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 821, 96 S. Ct. 1551, 1558 (1976). Thus, a claimant asserting a fifth amendment privilege may suffer from such an adverse inference in the context of a motion attacking the claimant's standing. In addition, a claimant asserting the privilege may ultimately be unable to prove an innocent-owner defense.

V. Review of the State's Complaint

The appellate court did not review the sufficiency of the State's complaint for forfeiture. The appellate court found that Jesus had waived any objection to the complaint by pleading over. 269 Ill. App. 3d 952. Similarly, the State argues that it is the act of filing an answer, and not whether the answer is later stricken, that serves to waive any further challenge to the sufficiency of the complaint. We find that Jesus has not waived his objection to the sufficiency of the State's complaint for forfeiture. On the merits, we conclude that the complaint fails to state a cause of action.

A. 
Waiver

Generally, where a trial court denies a motion to dismiss a complaint and a defendant pleads over by filing an answer, the defendant waives the objection to the complaint. 
Adcock v. Brakegate, Ltd.
, 164 Ill. 2d 54, 60 (1994). The waiver rule is designed to require a party to challenge a complaint at the earliest possible juncture, so that deficiencies may be cured by an amendment. This principle of waiver is a corollary to the doctrine of aider by verdict, which provides that a verdict will cure not only technical defects in a complaint, but also any defect in failing to allege substantial facts which are essential to the cause of action. 
Adcock
, 164 Ill. 2d at 60-61.

Initially, we note that this court has rejected the State's contention that the mere act of filing an answer forever waives the right to challenge a complaint. In 
Ingersoll v. Klein
, 46 Ill. 2d 42 (1970), plaintiff filed a complaint alleging the reckless operation of an automobile. Defendant filed an answer, but the answer was stricken for a technical defect some two years later. In the time for filing an amended answer, defendant instead filed a motion to strike the complaint. This court rejected the plaintiff's contention that the stricken answer constituted an irrevocable waiver of the right to challenge the complaint. 
Ingersoll
, 46 Ill. 2d at 44.

More importantly, the appellate court erred in applying the waiver rule after a judgment by default. The waiver rule and the corollary doctrine of aider by verdict do not apply to the review of a complaint after a default judgment. The waiver rule and the doctrine of aider by verdict are premised on the understanding that defects in a complaint will be later cured by a verdict based on the evidence and instructions given at the trial. However, where a court enters a judgment by default, there is no evidence presented at trial and no verdict to cure the deficiencies in the complaint.

After a default judgment, a party is entitled to challenge the sufficiency of a complaint on appeal. 
Suttles v. Vogel
, 126 Ill. 2d 186, 193 (1988). A default admits only those material facts stated in the complaint, it does not admit the conclusions of the pleader. 4 C. Nichols, Illinois Civil Practice §4120, at 236-37 (rev. 1992). On review, a default judgment must be reversed where the complaint upon which that judgment is premised fails to allege facts sufficient to state a cause of action. 
Suttles
, 126 Ill. 2d at 193; 
Roe v. County of Cook
, 358 Ill. 568, 570 (1934).

The appellate court further erred in considering the information contained in Sergeant Snyders' affidavit to determine that the State had satisfied its burden of establishing probable cause. Sergeant Snyders' affidavit was not submitted until after Jesus was found in default. In failing to plead, a party admits by default only the specific factual allegations contained in the complaint. Although the circuit court may request additional proof of the allegations stated in the complaint after a default (see 735 ILCS 5/2–1301(d) (West 1994)), it is the allegations stated in the complaint which must state a cause of action. In considering the facts in the affidavit as establishing probable cause, the appellate court effectively allowed the State to amend its complaint after the default. Furthermore, Jesus preserved his right to a thorough review of the sufficiency of the complaint by challenging the complaint as it stood prior to the entry of the default order. See 
Parrino v. Landon
, 8 Ill. 2d 468, 475 (1956) (applying a deferential standard of review to a complaint after default where challenge was made for the first time on appeal). We therefore review the sufficiency of the State's complaint on its merits.

B. 
Merits

Pleadings serve to inform the court and the parties of the legal theories relied upon and to give notice of the factual issues which are to be tried. 
Yeates v. Daily
, 13 Ill. 2d 510, 514 (1958). With this purpose in mind, the Civil Practice Law provides that pleadings are to be liberally construed with a view to doing substantial justice between the parties. 735 ILCS 5/2–603(c) (West 1994). Furthermore, “[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet.” 725 ILCS 5/2–612(b) (West 1994).

Although abandoning technical forms of pleading, Illinois remains a fact-pleading state. 
People ex rel. Fahner v. Carriage Way West, Inc.
, 88 Ill. 2d 300 (1981). Therefore, the allegations in a complaint must set forth facts that satisfy the elements necessary to support a cause of action. 
People ex rel. Scott v. College Hills Corp.
, 91 Ill. 2d 138, 145 (1982). The sufficiency of a complaint is an issue of law and our review is therefore 
de novo
. 
Toombs v. City of Champaign
, 245 Ill. App. 3d 580, 583 (1993).

In order to state a cause of action for forfeiture, the State must allege sufficient facts that, along with favorable inferences, will satisfy the State's burden of establishing probable cause to forfeit the property. The Act is based on the federal narcotics forfeiture statute, and specifically incorporates federal case law. 725 ILCS 150/2 (West 1994). Therefore, we look to the federal courts for guidance regarding the appropriate standard for probable cause in the context of civil forfeiture.

The federal courts define probable cause for forfeiture as reasonable grounds for belief of guilt, supported by less than 
prima facie
 proof but more than mere suspicion. 
United States v. One 1987 Mercedes 560 SEL
, 919 F.2d 327, 331 (5th Cir. 1990). In making this determination, there is no need to tie the property to a specific drug transaction. However, suspicions of general criminal activity are not enough; the government must have probable cause to believe that the property is connected specifically to drug activities. 
United States v. U.S. Currency
, $30,060.00
, 39 F.3d 1039, 1041 (9th Cir. 1994).

A split of authority exists in the federal circuits concerning the strength of the connection between currency and drug activity necessary to establish probable cause. Several circuits require only a “nexus” between the narcotics activity and currency sought to be forfeited. See, 
e.g.
, 
United States v. Daccarett
, 6 F.3d 37, 55-56 (2d Cir. 1993); 
United States v. $5,644,540
 in U.S. Currency
, 799 F.2d 1357 (9th Cir. 1986); 
$30,060
 in United States Currency
, 39 F.3d 1039, 1041 (9th Cir. 1994). A similarly liberal standard has been applied by the Second District of our appellate court. See 
People ex rel. Waller v. $4,175 United States Currency
, 239 Ill. App. 3d 857, 863 (1993) (requiring a “rational relationship between the contraband and the illegal activity”).

Other federal circuits have determined that a stronger connection to narcotics activity must be demonstrated where the seized property is currency. These circuits have required a “substantial connection” between the currency and drug activity to establish probable cause to forfeit. See, 
e.g.
, 
United States v. $95,945.18, 
United States Currency
, 913 F.2d 1106, 1110 (4th Cir. 1990); 
United States v. 1964 Beechraft Baron Aircraft
, 691 F.2d 725, 727 (5th Cir. 1982); 
United States v. $67,220
 in United States Currency
, 957 F.2d 280, 284 (6th Cir. 1992); 
United States v. $121,100
 in United States Currency
, 999 F.2d 1503, 1506 (11th Cir. 1993). “Under the substantial connection test, the property either must be used or intended to be used to commit a crime, or must facilitate the commission of a crime. At minimum, the property must have more than an incidental or fortuitous connection to criminal activity.” 
United States v. Schifferli
, 895 F.2d 987, 990 (4th Cir. 1990).

Those federal circuits applying the substantial connection standard to the forfeiture of currency generally justify its application based on the specific legislative history of section 881(a)(6), which uses the more exacting substantial connection language. See 
United States v. $364,960
 in United States Currency
, 661 F.2d 319, 323 (5th Cir. 1981) (citing Joint Explanatory Statement of Titles II and III, reprinted in 1978 U.S.C.C.A.N. 9518, 9522). However, section 881(a)(6) authorizes the federal government to bring forfeiture actions against only currency and other things of value given in exchange for drugs. 21 U.S.C. §881(a)(6) (1994). Thus, many of the federal circuits applying the substantial connection standard to the forfeiture of currency have declined to extend that requirement to other forfeiture actions, such as forfeitures of conveyances or real property used to facilitate drug activity. See, 
e.g.
, 
United States v. One 1974 Cadillac Eldorado Sedan
, 548 F.2d 421, 423 (2d Cir. 1977); 
1964 Beechraft Baron Aircraft
, 691 F.2d at 727; 
United States v. One 1984 Cadillac
, 888 F.2d 1133, 1135-36 (6th Cir. 1989); 
United States v. One Parcel of Real Estate Commonly Known as 916 Douglas Avenue, Elgin, Illinois
, 903 F.2d 490, 494 (7th Cir. 1990); but see 
United States v. Parcel of Land & Residence at 28 Emery Street, Merrimac, Massachusetts
, 914 F.2d 1, 3 (1st Cir. 1990) (noting that the first circuit requires a substantial connection for the forfeiture of real property and conveyances because of the drastic nature of the proceedings); 
Nnadi v. Richter
, 976 F.2d 682, 686 (11th Cir. 1992) (same); 
Schifferli
, 895 F.2d at 990. Indeed, in declining to extend the substantial connection requirement to the forfeiture of conveyances and real property, those federal circuits have noted that the plain language of those sections allows for the forfeiture of such property used “in any manner” to facilitate drug-related offenses. See 
1964 Beechraft Baron Aircraft
, 691 F.2d at 727; 
One Parcel of Real Estate Commonly Known as 916 Douglas Avenue, Elgin, Illinois
, 903 F.2d at 494.

Similarly, section 505(a)(5) of the Controlled Substances Act does not share the legislative history supporting the more restrictive gloss on probable cause. In addition, like the federal forfeiture provisions applying to real property and conveyances, the Controlled Substances Act provides for forfeiture of all moneys used “in any manner to facilitate” a drug violation. 720 ILCS 570/505(a)(5) (West 1994). For this reason, we agree with the State that forfeiture requires only some nexus, not a substantial connection, between the currency and drug activity. Thus, a complaint for forfeiture must allege facts providing reasonable grounds for the belief that there exists a nexus between the currency and illegal drug activity, supported by less than 
prima facie
 proof but more than mere suspicion.

Although we have interpreted the language in the Act consistently with those federal circuits applying a nexus standard, we note that the difference in phraseology that exists in the federal circuits is more semantic than practical. Where the State alleges that the currency was intended to be furnished for a controlled substance or was the proceeds thereof, the alleged nexus is self-evident and substantial. In addition, where the State alleges that the currency in some other way “facilitates” a controlled substances violation, the State must still further allege the manner in which the currency is used to make a controlled substance violation easier in order to demonstrate the necessary nexus. Thus, whatever distinction may exist between each standard, it is unlikely to ever produce different outcomes in the forfeiture of currency.

Applying these considerations, the State's complaint alleges that the police discovered the currency after a search of the van Jesus was driving. Paragraph eight of the State's complaint further alleges “that the U.S. Currency was furnished or intended to be furnished in exchange for a substance, or the proceeds thereof, in violation of the Controlled Substances Act.” The State argues that it need not plead its evidence and that the complaint alleges an “ultimate fact” that the money is related to drug trafficking. As it pleads this ultimate fact, the State argues that the complaint adequately states a cause of action for forfeiture.

 Whether a particular allegation is deemed to be an ultimate fact or a conclusion is a matter to be determined by a careful consideration of the needs of administering particular litigation. 
Van Dekerkhov
 v. City of Herrin
, 51 Ill. 2d 374, 376 (1972). In the context of a forfeiture proceeding, we believe that a complaint alleging that currency is drug related must provide some supporting detail that would provide notice to a claimant of the nature of the drug connection. Such factual detail is acutely necessary in the context of a civil forfeiture action, because the police may summarily seize property without judicial sanction. 720 ILCS 570/505(b)(4) (West 1994). Thus, an appropriate motion challenging the factual sufficiency of the State's complaint provides the first opportunity for a claimant to challenge the seizure in order to obtain the return of property wrongfully seized.

Federal pleading standards similarly recognize the need for factual specificity in forfeiture complaints to accommodate the drastic nature of the proceedings. Despite the lenient admiralty pleading standards, special rules applicable to forfeiture complaints require the government to “state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able to *** commence an investigation of 
the facts
 and to frame a responsive pleading.” (Emphasis added.) See Fed. R. Civ. P. Supplemental R. E(2)(a). Federal courts have interpreted this language to require greater factual specificity than is generally required under federal notice pleading. See 
United States v. $39,000 in Canadian Currency
, 801 F.2d 1210, 1216 (10th Cir. 1986); 
United States v. $38,000 in United States Currency
, 816 F.2d 1538, 1548 (11th Cir. 1987); 
United States v. Daccarett
, 6 F.3d 37, 47 (2d Cir. 1993).

“[A]n actionable wrong cannot be made out merely by characterizing acts as having been wrongfully done.” 
Adkins v. Sarah Bush Lincoln Health Center
, 129 Ill. 2d 497, 520 (1989). The State's naked allegation that the seized currency is drug related does not reasonably apprise an owner of the nature of the evidence that will be presented. Beyond this allegation, the State's complaint alleges only the discovery of a large amount of cash during the search of a stranded motorist's van. The discovery of a large amount of cash, without more, is insufficient to establish probable cause. 
United States v. One Hundred Twenty One Thousand One Hundred Dollars ($121,100) in United States Currency
, 999 F.2d 1503, 1507 (11th Cir. 1993). The complaint provides no additional factual support for the alleged drug connection of the currency. For this reason, the State's complaint for forfeiture fails to state a cause of action.

Although we have determined that the State's complaint is factually insufficient to support a finding of probable cause, we recognize that the State should have an opportunity to amend its complaint. On remand, the State must present some factual support in its complaint for the conclusory allegation that the currency is drug related. The State need not plead its evidence, but must allege some facts providing reasonable grounds for the belief that there exists a nexus between the currency and some illegal drug activity, supported by less than 
prima facie
 proof but more than mere suspicion.

CONCLUSION

To summarize, we hold that where a claimant files an answer contesting the forfeiture of property under the Act, it is the State's burden to challenge the claimant's standing to contest the forfeiture. Furthermore, the State may successfully satisfy this burden only where the State can prove that a claimant has not suffered an injury in fact to a legally cognizable interest. We further hold that a claimant may decline to answer the interrogatories contained in the Act pursuant to a claimant's constitutional privilege against self-incrimination, but such a refusal may result in adverse inferences against the claimant. We have further determined that where forfeiture is ordered by default, a claimant is entitled to challenge the sufficiency of the complaint on appeal. To survive such scrutiny, the State's complaint must allege facts supporting a finding of probable cause. Furthermore, probable cause is defined as reasonable grounds for the belief that there exists only a nexus, not a substantial connection, between the property and the illegal drug activity, supported by less than 
prima facie
 proof but more than mere suspicion. Last, we find that the State's complaint fails to state a cause of action for forfeiture.

For the reasons stated, we reverse the judgments of the circuit and appellate courts and we remand the cause to the circuit court to give the State the opportunity to amend its complaint and for further proceedings consistent with this opinion.

Appellate court judgment reversed;

circuit court judgment reversed;

cause remanded.

JUSTICE BILANDIC, specially concurring:

I agree with the majority that the circuit court erred in striking Mena's answer and that the entry of a default judgment of forfeiture must therefore be reversed. However, I do not agree with the majority's reasoning in reaching that conclusion. Specifically, I disagree with the majority's assertion that the claimant in a forfeiture action has no obligation to plead his or her standing to contest the forfeiture. I believe that the approach to the standing issue espoused in Chief Justice Freeman's dissent is correct. I also disagree with the reasoning employed by the majority in resolving the fifth amendment issue, and I would adhere to the analysis on this issue provided by Chief Justice Freeman's dissent.

With regard to the sufficiency of the State's complaint, I agree with the majority that the State's complaint fails to state a claim for forfeiture. I also agree with the majority that the State should be given the opportunity on remand to amend its complaint.

JUSTICE HEIPLE, concurring in part and dissenting in part:

I agree with the majority that the circuit court's forfeiture order must be reversed. I do not agree, however, that the State should be allowed to amend its complaint. The record in this case does not support the State's forfeiture claim.

The State's forfeiture complaint alleges only that on July 9, 1993, an Illinois state trooper stopped to assist Jesus and Elena Mena, who were standing beside a disabled van; that the trooper learned that the van was registered to Melvin DeJesus; and that during a search of the vehicle, $1,124,905 was found hidden in compartments in the floor. The complaint then states that “the U.S. Currency was furnished or intended to be furnished in exchange for a substance, or the proceeds thereof, in violation of the Controlled Substances Act” and that the currency was seized as “subject to forfeiture based upon the statutory provisions of [the Controlled Substances Act] as amended.”

The record, which consists of the complaint and the affidavit of Illinois State Police Sergeant Mike Snyders, discloses that on July 9, 1993, Jesus Mena was standing beside a stalled van along southbound Interstate 55 with his wife, Elena, who was holding a baby. Sergeant Snyders stopped to help them. According to Sergeant Snyders, Mena and his wife appeared nervous. Mena told Snyders that they were travelling to St. Louis to look for work, while Mena's wife said that they were headed for Texas. Mena told Snyders that the van belonged to a friend, although he could not remember the friend's name or phone number. The van was registered to Melvin DeJesus. Mena wore a beeper. Sergeant Snyders became suspicious and questioned Mena about the van. Mena stated that there was nothing hidden in the van and agreed to let Snyders search it.

Snyders called for police backup, and, while searching the van, he and another officer noticed that alterations had been made to the floor of the vehicle. The officers discovered a compartment in the floor that contained bundles of money wrapped in cellophane and duct tape. The cash totalled $1,124,905. At the police station, Mena admitted that he knew money was hidden in the van and stated that DeJesus had paid him to deliver the van to El Paso, Texas. Mena agreed to telephone the person he alleged was DeJesus. When Mena reported that the money had been found, “DeJesus” told Mena to “tolerate the whip and keep your mouth shut.” A follow-up investigation revealed that the address given on the vehicle registration was fraudulent, and that the social security number listed on the registration belonged to a Melvin DeJesus who was 11 years old.

The majority opinion correctly holds that a forfeiture complaint must allege facts that set forth reasonable grounds for the belief that a nexus exists between the seized property and illegal drug activity, supported by less than 
prima facie
 proof but more than mere suspicion. The complaint here fails to allege facts that create a reasonable basis for the belief that the currency was a product of the illegal drug trade. Instead, it merely states that a trooper stopped to assist a stranded motorist, and that $1,124,905 was found in the floor of the van. It then makes the conclusory and wholly speculative statement that the money found in the van was the product of illegal drug activity.

Even if the State had pled the facts set forth in Sergeant Snyders' affidavit, it still would not have established a reasonable basis to conclude there was a nexus between the money and illegal drugs. No illegal drugs or drug paraphernalia were found in the van or on the person of any of the van's occupants. There were no traces of illegal drugs on the money. The State neither alleged nor offered any evidence that the money was used in drug dealing. No connection has been shown between Mena and the drug underworld, and the State has presented no evidence as to the identity of the “real” Melvin DeJesus, or to show that he is involved in the illegal drug trade.

The concern for the distribution and consumption of illegal drugs in this country has reached a fever pitch. There is no question in my mind that civil liberties in this country have been seriously subordinated in the campaign to stamp out illegal drugs. Although a drug-free America may be a laudable 
desideratum
, this does not warrant the destruction of individual liberties and personal and property rights. These rights, after all, are the real essence of what this country is all about. One may speculate that the money in the subject van may have been there for bad purposes. However, there is no evidence to support that conjecture. We instruct our juries that their verdicts must be based upon the evidence and not upon speculation, guess, or conjecture and that prejudice should not influence them. Courts of review should do no less. There is no nexus to connect the money in this case with illegal drug activity. Hence, it is not subject to forfeiture.

CHIEF JUSTICE FREEMAN, dissenting:

My colleagues today choose to ignore the directives of the Illinois Drug Forfeiture Act. As a result, they wreak havoc on this state's forfeiture laws by creating new rules of procedure which contravene those expressly enacted by our General Assembly. In addition, my colleagues disregard our own case law as well as decisions from across the nation. Because of this, the State of Illinois henceforth faces a greater burden in statutory forfeiture proceedings than any other governmental body in this country. For the reasons I set forth below, the majority's decision represents a result-oriented approach to decisionmaking. I believe such an opinion is unworthy of this court's 
imprimatur
; therefore, I must respectfully dissent.

Standing Under the Forfeiture Act

Although I agree with my colleagues that Mena's standing to contest the forfeiture of the currency is the first issue that must be resolved, I do not believe that common law principles of standing should apply in this case. Rather, in my view, Mena's standing must be evaluated in light of the specific standing requirements set forth in the Forfeiture Act. A review of that Act, therefore, is necessary.

The General Assembly enacted the Illinois Drug Forfeiture Act in 1990 in order to deter the rising incidence of drug abuse and trafficking within our state. See 725 ILCS 150/2 (West 1992). To that end, our act was modeled after the federal narcotics civil forfeiture statute, which the legislature found to be successful in deterring similar substance abuse problems throughout the country. See 725 ILCS 150/2 (West 1992) (intending Forfeiture Act to be construed in light of federal forfeiture provisions). Under our Forfeiture Act, property which is seized in accordance with the rules set forth in the Controlled Substances Act (720 ILCS 570/100 
et seq.
 (West 1992)) and the Cannabis Control Act (720 ILCS 550/1 
et seq.
 (West 1992)) may be forfeited to the State in two different ways, depending on the value of the property. In instances in which the seized property does not exceed $20,000, a nonjudicial forfeiture action is commenced by the State's Attorney of the county in which the property was seized. 725 ILCS 150/6 (West 1992). If, however, the value of the seized property exceeds $20,000, as in this case, the State “shall institute judicial in rem forfeiture proceedings” in accordance with section 9 of the Forfeiture Act. 725 ILCS 150/6 (West 1992). In those cases, section 9(A) directs that the State “shall institute judicial forfeiture proceedings by filing a verified complaint for forfeiture.” 725 ILCS 150/9(A) (West 1992).

The Forfeiture Act further provides that a person who wishes to contest the forfeiture of the seized property must file an answer to the complaint within 45 days of service of the complaint. 725 ILCS 150/9(E) (West 1992). However, the Act limits the class of persons entitled to file such an answer to “[o]nly an owner of or interest holder in the property.” 725 ILCS 150/9(C) (West 1992). Such persons are referred to as “claimants.” 725 ILCS 150/9(C) (West 1992). In addition, section 9(D) mandates that a claimant's answer must contain certain information. Specifically, section 9(D) states 
in toto
:

“The answer must be signed by the owner or interest holder under penalty of perjury and must set forth:

(i) the caption of the proceedings as set forth on the notice of pending forfeiture and the name of the claimant;

(ii) the address at which the claimant will accept mail;

(iii) the nature and extent of the claimant's interest in the property;

(iv) the date, identity of transferor, and circumstances of the claimant's acquisition of the interest in the property;

(v) the name and address of all other persons known to have an interest in the property;

(vi) the specific provisions of Section 8 of this Act relied on in asserting it [the property] is not subject to forfeiture;

(vii) all essential facts supporting each assertion; and

(viii) the precise relief sought.” 725 ILCS 150/9(D) (West 1992).

Taken together, these subsections clearly demonstrate that the General Assembly intended that, in order to become a party to the litigation, the claimant must plead one of the property interests identified in section 9(C). After all, the claimant is the party who is invoking the statutory right to assert a claim against the property. See 725 ILCS 150/9(C) (West 1992). Placing the burden upon the claimant to identify his or her interest in the property is only logical, for it is the claimant who possesses the information regarding the nature and extent of that interest. Because the General Assembly has expressly conditioned a claimant's right to contest the forfeiture of property upon compliance with the Forfeiture Act, common law principles of standing do not apply. Overwhelming support for this proposition can readily be found in previous decisions from this court.

A forfeiture proceeding is a creature of statute. As such, courts must look to the statute in order to determine which persons are entitled to seek the relief provided for by the General Assembly. In other words, the General Assembly, having created the right to contest the forfeiture of seized property, may limit or restrict the class of people entitled to assert that right. This concept, often referred to as “statutory standing,” has, heretofore, been recognized by this court when addressing a right which did not exist at common law. See 3 R. Michael, Illinois Practice §24.9, at 398-401 (1989). The concept of statutory standing is founded upon the judiciary's recognition that the “legislature, having conferred a right of action *** may determine who shall sue, and the conditions under which the suit may be brought.” 
Wilson v. Tromly
, 404 Ill. 307, 310 (1949), citing 
McFadden v. St. Paul Coal Co.
, 263 Ill. 441 (1914). In fact, this court has consistently adhered to the notion that our General Assembly may attach conditions to the relief it creates. See 
Wilson
, 404 Ill. at 311; 
Fitzpatrick v. Pitcairn
, 371 Ill. 203 (1939); 
Metropolitan Trust Co. v. Bowman Dairy Co.
, 369 Ill. 222 (1938); 
Day v. Talcott
, 361 Ill. 437 (1935); 
Bishop v. Chicago Rys. Co.
, 303 Ill. 273 (1922); 
Hartray v. Chicago Rys. Co.
, 290 Ill. 85 (1919). That being the case, it is the party seeking the statutorily created relief who must “ `bring himself clearly within the prescribed requirements necessary to confer the right of action.' ” 
Wilson
, 404 Ill. at 311, quoting 
Hartray v. Chicago Rys. Co
., 290 Ill. 85, 87 (1919); 
Fitzpatrick
, 371 Ill. at 210. See also 
Paxson v. Board of Education of School District No. 87
, 276 Ill. App. 3d 912, 925 (1995); 
Baird v. Chicago, Burlington & Quincy R.R. Co.
, 11 Ill. App. 3d 264, 269 (1973). In view of this substantial body of Illinois precedent, the claimant in a forfeiture action must bring himself within the statute's requirements. For this reason, the standing issue raised in the present case can only be resolved through reliance on principles of statutory, as opposed to common law, standing.

Majority's View of Standing

Notwithstanding the above, my colleagues hold–without explanation–that common law principles of standing “trump” the specific requirements of the Forfeiture Act. In fact, they conclude, on the basis of this court's decision in 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462 (1988), that Mena need not allege facts to support his standing. Instead, the majority erroneously believes that standing under the Forfeiture Act is, like common law standing, an 
affirmative defense
 which the State must plead and prove. Slip op. at 11-12. The majority submits that the State may “successfully satisfy this burden only where the State can prove that the claimant has not suffered an injury in fact to a legally cognizable interest.” Slip op. at 12. The majority's position, however, is legally indefensible. Common law principles of standing have nothing to do with this case because forfeiture proceedings are governed by the statutes which created the claimant's right to contest the forfeiture in the first instance. Case law from across the nation compels this conclusion.

Remainder of the Country's View of Standing

Due to the fact that the issue of standing with respect to statutory forfeiture actions is one of first impression in this state, I have turned to the decisions of our sister states for guidance on this seemingly rudimentary issue. Not surprisingly, I discovered that no other court in this country which has addressed the issue has utilized the common law approach espoused by my colleagues. Rather, courts analyzing this issue have routinely looked to the specific forfeiture statutes in order to determine whether the claimant had alleged the statutory requirements. For example, in 
People v. $28,500 United States Currency
, 51 Cal. App. 4th 447, 467, 59 Cal. Rptr. 2d 239, 252 (1996), the court acknowledged that “a claimant must show he has a recognizable legal or equitable interest in the seized property in order to establish standing.” Similarly, in 
State v. Alford
, 264 Ga. 243, 244-45, 444 S.E.2d 76, 78 (1994), the Supreme Court of Georgia held that an answer which fails to allege certain information required under the Georgia forfeiture statute is insufficient as a matter of law. Accord 
Jackson v. State
, 218 Ga. App. 437, 440, 461 S.E.2d 594, 595 (1995) (holding that the “onus [falls] on claimant to establish both his standing to contest the forfeiture and his entitlement to a statutory exception”).

The majority's novel approach to standing under the Forfeiture Act also flies in the face of numerous decisions from the federal courts. In fact, the federal circuits uniformly hold that it is the claimant who must plead his or her interest in the property in order to be recognized as a party to the forfeiture action. In 
United States v. $191,910.00 in U.S. Currency
, 16 F.3d 1051, 1057 (9th Cir. 1994), the Ninth Circuit Court of Appeals could not have been more clear than when it stated that “[t]o have 
standing 
to challenge a forfeiture, a 
claimant must allege
 that he has an ownership or other interest in the forfeited property.” (Emphasis added.) The same viewpoint can be found in a decision from the Fifth Circuit Court of Appeals, in which the court acknowledged that “[t]o contest a forfeiture action, an individual bears the burden of `demonstrat[ing] an interest in the seized item sufficient to satisfy the court of his standing' as a claimant. [Citations.]” 
United States v. $38,570 U.S. Currency
, 950 F.2d 1108, 1111 (5th Cir. 1992). Like the Ninth and Fifth Circuits, the Eleventh Circuit Court of Appeals has recognized that “a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture.” 
United States v. Five Hundred Thousand Dollars
, 730 F.2d 1437, 1439 (11th Cir. 1984). Finally, in 
United States v. United States Currency in the Amount of $2,857.00
, 754 F.2d 208, 213 (7th Cir. 1985), the Seventh Circuit Court of Appeals stressed that an “essential element” of standing to contest a forfeiture is the filing of a claim which meets the procedural requirements of the federal forfeiture provisions.

I agree with the rationale found in each of the decisions cited above. Interestingly enough, in none of those cases, either state or federal, did the courts ever place upon the government the affirmative obligation to disprove a claimant's interest in the property. Neither did our General Assembly, I might add, when it enacted our Forfeiture Act. The Act requires only that the State show probable cause for the forfeiture once the parties are at issue. See 725 ILCS 150/9(G) (West 1992). Unfortunately, my colleagues today have taken it upon themselves to substitute their own judgment for that of the elected members of our legislature. As a result, the State of Illinois, unlike any other state, now finds itself in the unenviable position of having to disprove a claimant's interest in the property despite the fact that the nature and extent of that interest are facts peculiarly within the claimant's knowledge.

Moreover, the majority fails to explain how the State will be able to garner the information it will need to meet this burden at the pleading stage of the forfeiture proceeding. I note that where currency is involved, the task of establishing that an individual is not the owner of all or part of the money is difficult, if not impossible. This is particularly true where, as in the instant case, the claimant invokes his fifth amendment privilege in his answer. I remind my colleagues that the legislature expressly limited the class of persons entitled to assert a claim against seized property in the forfeiture proceedings–no doubt intending to prevent specious claims. In my view, the majority's ruling will open the door to opportunistic claims being made. As one federal judge has aptly noted, placing the burden of pleading standing on the claimant makes sense because “absent standing, [the claimant] cannot contest the government's probable cause”; otherwise, “ `persons with no interest whatsoever in seized property could make a handsome living filing claims.' ” 
United States v. Certain Real Property Located at 16510 Ashton, Detroit, Wayne County, Michigan
, 47 F.3d 1465, 1473 (6th Cir. 1995) (Boggs, J., dissenting) quoting D. Smith, Prosecution and Defense of Forfeiture Cases §9.04, at 9–62.7 (1994).

Even more troubling, however, is the fact that the majority fails to fully appreciate the fell consequences of its decision to incorporate common law principles of standing into statutory forfeiture proceedings. Common law standing is, of course, an affirmative defense, and, as such, it must be pleaded or else it is waived. 
Geise v. Phoenix Co. of Chicago, Inc.
, 159 Ill. 2d 507, 514 (1994). Therefore, should the State ever fail to raise standing during the pleading stage, the State will be forever barred from seeking to remove the claimant from the litigation–even if it is later determined that the claimant lacks the requisite property interest set forth in section 9(C) of the Forfeiture Act. Such a result not only contravenes the dictates of the General Assembly, but it defies common sense.

I would be remiss, however, if I did not point out that my colleagues at least acknowledge the contrary federal case law in this area. Nevertheless, the majority cavalierly dismisses these cases under the mistaken belief that they are “grounded largely on the jurisdictional case and controversy requirements imposed by article III of the United States Constitution.” Slip op. at 10. My colleagues, however, fail to realize that (i) article III standing and statutory standing, while conceptually related, are not the same, and (ii) 
both
 article III standing and statutory standing must be satisfied in order for a claimant to contest the forfeiture of seized property in the federal courts. See 
United States v. One Parcel of Real Property With Buildings, Appurtenances & Improvements Known as 116 Emerson St., Located in the City of Providence, Rhode Island
, 942 F.2d 74, 78 (1st Cir. 1991) (holding that an ownership allegation made 
by the claimant
 satisfies both article III standing and prudential (statutory) standing concerns); 
United States v. United States Currency in the Amount of $103,387.27
, 863 F.2d 555, 560 (7th Cir. 1988) (noting distinction between the types of standing, but nevertheless affirming order granting government's motion to dismiss the claim because claimant's allegations failed to meet statutory standing requirements). Therefore, to the extent that the federal decisions are grounded upon the concept of statutory standing, they 
are
 relevant to the issue presented in the case at bar.

Other courts have recognized as much. For example, in 
People v. $28,500 United States Currency
, 51 Cal. App. 4th. 447, 468, 59 Cal. Rptr. 2d 239, 253 (1996), the California Court of Appeal undertook an exhaustive review of federal law in order to determine whether a forfeiture claimant was an interested party “within the meaning of the forfeiture statutes.” After noting that “standing is ordinarily treated as a threshold legal issue in the federal system,” the court concluded, “
We see no reason to apply a different rule in proceedings initiated under the California forfeiture statutes
.” (Emphasis added.) 
$28,500
, 51 Cal. App. 4th at 467, 59 Cal. Rptr. 2d at 252. Notably absent from the court's discussion is any mention of the inapplicability of the federal rationale on the basis of article III concerns. I, therefore, believe that the majority's grounds for disregarding federal law are untenable.

Application of the Principles of Statutory Standing

Having outlined the reasons why I find the majority's standing analysis wholly inapposite to statutory forfeiture actions, I now offer my own analysis of Mena's standing, which I believe better comports with the intent of the General Assembly and is more faithful to this court's prior decisions. In my opinion, the case at bar requires that this court determine whether Mena's assertion of “exclusive ownership” in the property satisfied the standing requirements established by the legislature in the Forfeiture Act. My research suggests that it does.

Although the courts of this state have never examined what a claimant must plead in order to satisfy the statutory requirements of section 9(C), I note that the federal courts have addressed what is needed to satisfy the requirements of the comparable federal statute. The federal statute, like the Illinois statute, requires claimants to have a recognizable legal or equitable interest in the subject property. In light of the fact that the General Assembly intended for our statute to be construed in light of the federal forfeiture provisions, I believe that a review of those cases is helpful in determining whether Mena's claim of “exclusive ownership” in the property satisfies section 9(C)'s mandate.

In 
United States v. $191,910.00 in U.S. Currency
, 16 F.3d 1051 (9th Cir. 1994), the federal government sought the forfeiture of certain monies it believed were used in connection with a drug transaction. The possessor of the money thereafter filed a verified claim for the money, stating that he owned some of the funds and was carrying the remainder for a client. The district court ultimately granted summary judgment in favor of the claimant. On appeal, the government argued, 
inter alia
, that the claimant lacked standing because he had failed to specify in detail the nature of his possessory interest in the property. The Ninth Circuit Court of Appeals rejected the argument, holding that a claimant need not explain his interest in detail if the answer did “something more than conclusorily state that [the claimant] has some undefined interest.” 
$191,910.00
, 16 F.3d at 1057. The court reasoned that “a simple claim of 
ownership
 will be sufficient to create standing to challenge a forfeiture.” (Emphasis in original.) 
$191,910.00
, 16 F.3d at 1058. According to the Ninth Circuit, only bare assertions of “
unexplained
 possession” would be deemed insufficient to confer standing. (Emphasis in original.) 
$191,910.00
, 16 F.3d at 1058. As a result, the claimant's assertions were held to be adequate to satisfy the standing requirements necessary to challenge the forfeiture of the property. See also 
United States v. $38,000 in United States Currency
, 816 F.2d 1538 (11th Cir. 1987) (holding that allegations of ownership or lesser possessory interests confer standing to contest forfeiture actions).

In so holding, the Ninth Circuit distinguished an earlier case from the Second Circuit Court of Appeals, 
Mercado v. U.S. Customs Service
, 873 F.2d 641 (2d Cir. 1989). Unlike the claimant in 
$191,910.00
, the claimant in 
Mercado
 did not give any explanation as to the 
type of interest
 he held in the property, 
i.e.
, ownership or lesser possessory interest. The district court ruled that without an assertion of some type of legally recognized possessory interest, the claimant lacked standing to challenge the forfeiture. The court of appeals affirmed, holding that in order for a claimant to satisfy standing, the answer must contain “some indication that the claimant is in fact a possessor, not a simple, perhaps unknowing custodian.” 
Mercado
, 873 F.2d at 645. Although the court in 
Mercado
 found that the claimant lacked standing under the circumstances of that case, the court nevertheless implicitly recognized that a possessor's allegations of ownership may confer standing. 
Mercado
, 873 F.2d at 645.

Not all of the federal circuits, however, agree that a simple allegation of ownership can confer standing in a forfeiture proceeding. The Fifth Circuit Court of Appeals has held that “a bare assertion of ownership of the 
res
, without more, is inadequate to prove an ownership interest sufficient to establish standing.” 
United States v. $38,570 in U.S. Currency
, 950 F.2d 1108, 1112 (5th Cir. 1992). Even so, the Fifth Circuit has found that, in such a case, standing requirements will be met when that bare assertion is viewed in conjunction with the allegations contained in the government's forfeiture complaint. For example, in 
United States v. $38,570
, the forfeiture complaint alleged that the claimant was present at the time the money was seized and had control over it. Those facts, coupled with the claimant's bare assertion of ownership in his verified claim, established standing. 
$38,570
, 950 F.2d at 1112.

In my view, Mena has standing to contest the forfeiture in this case under either the approach taken by the Ninth and Eleventh Circuits or the more restrictive analysis employed by the Fifth Circuit. The record here reveals that the State's own complaint alleged that Mena was present at the time the money was seized and had control over it. In addition, the State attached to its complaint certain affidavits which indicated that it had notified Mena of the forfeiture proceeding. In those affidavits, the State identified Mena as an owner of or interest holder in the property. Finally, Mena himself claimed “exclusive ownership” in the property in his verified answer to the amended complaint. Under these circumstances, Mena clearly had standing to challenge the forfeiture action.

The Fifth Amendment

My next point of disagreement with the majority centers on its treatment of Mena's assertion of the fifth amendment privilege. The record in this case reflects Mena invoked the privilege in his answer instead of revealing “the date, identity of transferor, and circumstances of [his] acquisition of the interest in the property,” as required under section 9(D)(iv) of the Forfeiture Act. The circuit court ruled that Mena could not invoke the fifth amendment and, therefore, struck his answer. On appeal before this court, Mena argues that the General Assembly's requirements, contained in section 9(D), cannot supersede the rights guaranteed to him under the fifth amendment of the United States Constitution. In disposing of this issue, my colleagues summarily note the following:

“The statutory requirements for an answer contained in section 9(D) do not represent any burden of proof, but are merely a set of interrogatories to be answered by a claimant to expedite the proceedings. Therefore, Jesus' invocation of the fifth amendment does not serve as a basis for striking his answer because it is not being used to satisfy a burden of production on the issue of standing.” Slip op. at 13.

First, I do not understand the majority's dual reference to a “burden of proof” and a “burden of production.” Presumably, by “burden of proof” my colleagues are referring to Mena's obligation under section 9(G). See 725 ILCS 150/9(G) (West 1992) (requiring a claimant to “show[ ] by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture”). I would simply note, however, that any discussion of the burden of proof is premature at this time. Mena's invocation of his fifth amendment right does not arise in the context of a trial but, rather, in the context of his answer to the State's complaint, 
i.e.
, during the pleading stage. Matters concerning the burden of proof, therefore, like common law standing, have nothing to do with this case. Moreover, I am puzzled by the majority's characterization of the requirements of section 9(D) as “a set of interrogatories to be answered by a claimant to expedite the proceedings.” Although I may agree that Mena's compliance with section 9(D) will expedite this litigation, I, unlike my colleagues, do not view the requirements of section 9(D) as mere interrogatories. As I pointed out above, the General Assembly intended section 9(D) to act as a mechanism for limiting the class of persons entitled to contest the forfeiture of the property. The requirements of section 9(D), therefore, not only expedite forfeiture proceedings, but also serve as an effective means of thwarting the filing of specious claims.

At any rate, my colleagues skirt the 
real
 issue of whether a claimant may invoke the fifth amendment in his or her answer in lieu of providing the information required under section 9(D). I would answer that question, however, in the following manner.

The fifth amendment provides that “[n]o person *** shall be compelled in any criminal case to be a witness against himself ***.” U.S. Const., amend. V. Although the amendment speaks to criminal proceedings, the United States Supreme Court has recognized that the right provides a privilege “not to answer official questions put to [an individual] in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the individual] in future criminal proceedings.” 
Lefkowitz v. Turley
, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 281, 94 S. Ct. 316, 322 (1973). Accordingly, the Court has applied the privilege to civil proceedings whenever the answer given might tend to subject its provider to criminal liability. See 
McCarthy v. Arndstein
, 266 U.S. 34, 40, 69 L. Ed. 158, 160, 45 S. Ct. 16, 17 (1924).

In this case, it is beyond dispute that Mena's disclosure of the circumstances surrounding his acquisition of the property would pose a realistic threat of future criminal liability. Indeed, requiring Mena to comply with section 9(D)(iv) by specifying “the date, identity of transferor, and circumstances of the claimant's acquisition of the interest in the property” could potentially and impermissibly furnish “a link in the chain of evidence needed to prosecute.” 
Hoffman v. United States
, 341 U.S. 479, 486, 95 L. Ed. 1118, 1124, 71 S. Ct. 814, 818 (1951). Moreover, although it may be argued that forfeiture claimants are not compelled to intervene in the proceedings and therefore do so at their own will, such claimants, when confronted by the disclosure provisions of section 9(D), nevertheless face a Hobson's choice: either surrender the constitutional privilege and subject themselves to possible criminal prosecution, or forgo the opportunity to contest the forfeiture. In fact, given the mandatory nature of section 9(D)'s disclosure provisions, the failure to provide the information results in the loss of a claimant's ability to proceed in the action–virtually assuring the forfeiture of the property to the State. Without a claimant, the circuit court need only determine that probable cause exists for the forfeiture of the property. 725 ILCS 150/9(G) (West 1992). The State would not be required to offer any evidence on the question of innocent ownership or other potential defenses a claimant might have. As the United States Supreme Court has recognized, the purpose of an adversary hearing is to insure the requisite neutrality that must inform all governmental decisionmaking, which is “of particular importance [in forfeiture cases] where the Government has a direct pecuniary interest in the outcome of the proceeding.” 
United States v. James Daniel Good Real Property
, 510 U.S. 43, 55-56, 126 L. Ed. 2d 490, 504, 114 S. Ct. 492, 502 (1993). See also 
Harmelin v. Michigan
, 501 U.S. 957, 978 n.9, 115 L. Ed. 2d 836, 854 n.9, 111 S. Ct. 2680, 2693 n.9 (1991) (noting that “it makes sense to scrutinize governmental actions more closely when the State stands to benefit”); 
United States v. All Assets of Statewide Auto Parts, Inc.
, 971 F.2d 896, 905 (2d Cir. 1992) (disapproving of 
ex parte
 hearings in forfeiture cases because of their lesser constitutional projections).

Finally, and more importantly, forfeiture proceedings must comport with the due process clauses of the fifth and fourteenth amendments and, therefore, require both notice and the opportunity to be heard. See 
United States v. James Daniel Good Real Property
, 510 U.S. at 48, 126 L. Ed. 2d at 500, 114 S. Ct. at 498. If this court were to disallow the assertion of the fifth amendment in the answer, those claimants who do so would lose the opportunity to be heard in the case simply because of the invocation of the privilege. This cannot be so. As the United States Supreme Court has noted, it is “intolerable that one constitutional right should have to be surrendered in order to assert another.” 
Simmons v. United States
, 390 U.S. 377, 394, 19 L. Ed. 2d 1247, 1259, 88 S. Ct. 967, 976 (1968). Thus, for the foregoing reasons, I believe that forfeiture claimants, such as Mena, should be permitted to invoke the fifth amendment right against self-incrimination with respect to section 9(D)(iv) of the Forfeiture Act.

Notwithstanding the above, the State points to a number of federal forfeiture cases in which claimants were not allowed to invoke their fifth amendment privilege. See, 
e.g.
, 
Mercado v. U.S. Customs Service
, 873 F.2d 641 (2d Cir. 1989); 
Baker v. United States
, 722 F.2d 517 (9th Cir. 1983). However, under the federal forfeiture scheme, claimants are not required to disclose the potentially incriminating information obligated by section 9(D)(iv) of our Forfeiture Act. Compare 725 ILCS 150/9(D) (West 1992) with Fed. R. Civ. P. Supplemental R. C(6). Thus, because the statutory requirements contained in the federal forfeiture provisions differ from those enacted by our General Assembly, federal case law offers little assistance in resolving the fifth amendment question posed in this case.

Despite the lack of relevant federal precedent, I note that at least one sister state has allowed claimants to invoke the fifth amendment when disclosing information relating to a claimant's acquisition of his or her interest in the property. See 
Wohlstrom v. Buchanan
, 180 Ariz. 389, 884 P.2d 687 (1994) (analyzing Arizona statutory provision virtually identical to section 9(D)(iv) of the Illinois Forfeiture Act). In 
Wohlstrom
, the claimant refused to provide details surrounding his acquisition of the property because he claimed the information was protected under the fifth amendment. The trial judge struck the claimant's answer because it did not comply with the statute. The Arizona Supreme Court reversed, holding that claimants could assert the fifth amendment during the pleading stage of a forfeiture case. The court reasoned that the legislature could not compel forfeiture claimants to choose between asserting the fifth amendment or forgoing the opportunity to be heard in the forfeiture proceeding. Interestingly, in arguing against the allowance of a fifth amendment invocation, the State of Arizona pointed to the very same federal cases cited by the State in this case. The court concluded that the federal cases were distinguishable because the federal statutory provisions differed significantly from those of Arizona. 
Wohlstrom
, 180 Ariz. at 393, 884 P.2d at 691. I agree with this analysis and, likewise, would allow Mena to invoke the fifth amendment in his answer to the State's complaint in this case.

That said, however, I emphasize that the assertion of the fifth amendment–without impunity–can only be made at the pleading stage. Those claimants who continue to assert the fifth amendment during the evidentiary portion of the case would do so at their own risk. Forfeiture proceedings are civil in nature, and in civil cases, fact finders are entitled to draw negative inferences against those who assert fifth amendment rights against self-incrimination. 
Baxter v. Palmingiano
, 425 U.S. 308, 317-18, 47 L. Ed. 2d 810, 820-21, 96 S. Ct. 1551, 1557-58 (1976). In other words, once a case moves beyond the pleading stage, a claimant may not necessarily satisfy his or her evidentiary burden should he or she choose to assert the fifth amendment rather than present evidence relevant to the innocent-owner defense. I further acknowledge, unlike my colleagues, that there may be times when, in order to establish a sufficient property interest, it will be necessary for a claimant to provide some incriminating information. Under these circumstances, other remedies may be appropriate, such as staying forfeiture proceedings pending the outcome of any related criminal charges or requiring immunity for the claimant's disclosures. See 
Simmons
, 390 U.S. at 394, 19 L. Ed. 2d at 1259, 88 S. Ct. at 976 (testimony to establish standing must be immunized); 
All Assets
, 971 F.2d at 905 (recommending stay);
 United States v. U.S. Currency
, 626 F.2d 11, 16-18 (6th Cir. 1980) (exploring alternatives for accommodating parties' interests).

In light of the foregoing, I would reverse the circuit court's order striking Mena's answer on the basis of his invocation of the fifth amendment. Accordingly, I would also reverse the entry of the default judgment based upon the stricken answer.

Sufficiency of the State's Complaint

The final issue I wish to address in this dissent concerns the factual sufficiency of the State's complaint. Discussion of this issue requires that I first consider the related question of whether Mena is even entitled to raise this issue on appeal. Contrary to the majority, I do not believe that he is. Mena, having filed an answer subsequent to the denial of his motion to strike, waived any further opportunity to challenge the sufficiency of the State's complaint.

This court has previously held that where the circuit court denies a party's motion to strike a complaint based on factual insufficiency and that party thereafter elects to file an answer to that complaint, the party waives any defect in the pleading on appeal. 
Adcock v. Brakegate, Ltd.
, 164 Ill. 2d 54, 60 (1994) citing 
Cottrell v. Gerson
, 371 Ill. 174 (1939). See also 
Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.
, 96 Ill. 2d 150, 155 (1983); 3 R. Michael, Illinois Practice §27.5, at 513 (1989). The record in this case reflects that Mena did, in fact, move to strike the State's complaint on the basis of factual insufficiency. The circuit court granted the motion in part and denied it in part. Shortly thereafter, Mena elected to file an answer to the amended complaint. Indeed, it was this answer which spawned the entire dispute concerning Mena's right to assert his fifth amendment privilege. In any event, Mena, having filed an answer to the complaint after the denial of his motion to strike, has waived the right to challenge the sufficiency of the State's complaint on appeal. 
Adcock
, 164 Ill. 2d at 60. Accordingly, I agree with the appellate court to the extent that it considered this issue waived.

In reaching this conclusion, I am not unmindful of the fact that our Forfeiture Act is silent as to how a claimant may challenge the sufficiency of the State's complaint. In this regard, I note that the Act requires a claimant to first appear in the 
in rem
 action by filing what the statute refers to as an “answer.” See 725 ILCS 150/9(C) (West 1992). Consequently, because a claimant's first appearance in the action consists of the filing an answer, there appears to be no opportunity for a claimant to present any pre-answer motions to strike and/or dismiss. Thus, our Forfeiture Act does not admit of the recognizable pre-answer motion practice usually associated with civil actions. Moreover, the lack of this pre-answer motion practice stands in stark contrast to the procedure employed under the federal forfeiture statute. Under federal law, a claimant initially files a “claim” which establishes his or her requisite standing. Fed. R. Civ. P. Supplemental R. C(6). The federal statute then requires the claimant to “serve an answer within 20 days after the filing of the claim.” Fed. R. Civ. P. Supplemental R. C(6). During the time period between the filing of the claim and the filing of the answer, claimants in the federal courts may file motions to strike which challenge the factual sufficiency of the government's complaint. As a result, federal courts have routinely entertained such motions prior to filing of the claimants' answers. On the other hand, the Illinois Forfeiture Act does not require both a claim and answer; therefore, the claimant does not have any time within which to file a motion to dismiss prior to filing his answer.

In pointing out the deficiencies of our Forfeiture Act with respect to the lack of a pre-answer motion practice, I realize that, in this case, the circuit court provided Mena with the opportunity to challenge the factual sufficiency of the State's complaint. Therefore, Mena was not prejudiced by any of the above-noted deficiencies contained in our Forfeiture Act. However, my discussion of these deficiencies should not be viewed as merely an academic one–I write on this point in order to alert our General Assembly to the problem in the hope that the General Assembly will rectify our statute or more clearly specify the procedure by which a claimant may challenge the sufficiency of the State's complaint.

I now turn my attention to the substantive arguments regarding the factual sufficiency of the State's complaint. Although I disagree with my colleagues' conclusion that this issue has not been waived, Mena's contention, nevertheless, lacks merit. The complaint in this case specifically alleges when, where, and under what circumstances the money was seized. For instance, the complaint alleged that, on July 17, 1993, Illinois state troopers stopped to assist a stranded motorist, Jesus Mena, and his family as they stood outside a van on Interstate 55. The troopers eventually learned that the vehicle, a 1988 Chevrolet Astro Van, was registered to Melvin J. DeJesus. During a subsequent search of the vehicle, the troopers found $1,124,905 hidden in makeshift compartments built into the floor of the vehicle. The complaint further alleged that “[t]hat the U.S. currency was furnished or intended to be furnished in exchange for a substance, or the proceeds thereof, in violation of the Controlled Substances Act; ***[and] [t]hat the troopers seized the [currency and the vehicle] which is subject to forfeiture based upon the statutory provisions of 720 ILCS 570/505 ***.” In its prayer for relief, the State requested the forfeiture of both the van and the currency. In my opinion, these allegations are factually sufficient to withstand a motion to strike.

My conclusion in this regard is consistent with decisions of the federal courts which have addressed what must be pled by the government in a complaint in order to withstand a motion to strike on the basis of factual insufficiency. Although the federal rules of civil procedure ordinarily require only notice pleading, Congress has, nevertheless, mandated that a more heightened pleading standard be employed in federal forfeiture actions. As a result, the government's complaint must contain specific and particular allegations. See 
United States v. U.S. Currency in the Amount of $150,660.00
, 980 F.2d 1200, 1204 (8th Cir. 1992); 
United States v. One Parcel of Real Property
, 921 F.2d 370, 375 (1st Cir. 1990); 
United States v. $39,000 in Canadian Currency
, 801 F.2d 1210, 1216 n.3 (10th Cir. 1986); see also 
United States v. Daccaratt
, 6 F.3d 37, 47 (2d Cir. 1993). In this way, the federal forfeiture pleading rules are similar to those of this state, which requires fact pleading. For this reason, reliance on federal case law to resolve the issue of what the state must plead in its complaint is particularly appropriate.

The federal courts recognize that the pleading requirements of the federal forfeiture provisions do not require the government to meet, at the pleading stage, its ultimate burden of proof at trial. See 
$150,660.00
, 980 F.2d at 1204; 
United States v. Real Property Located at 2323 Charms Road, Milford Township, Oakland County, Michigan
, 946 F.2d 437, 441 (6th Cir. 1991). Thus, a federal forfeiture complaint “need not allege facts sufficient to support `a reasonable belief that specific property is tainted', but facts sufficient to support a `reasonable belief that the government [can] demonstrate 
probable cause
' for finding the property tainted.” (Emphasis in original.) 
$150,660.00
, 980 F.2d at 1205, quoting 
One Parcel of Real Property
, 921 F.2d at 376, quoting 
United States v. Pole No. 3172, Hopkinton
, 852 F.2d 636, 640 (1st Cir. 1988). Applying this standard, the federal courts have held that allegations concerning the discovery of large amounts of cash are sufficient to meet the heightened pleading requirements of federal forfeiture actions. 
United States v. U.S. Currency in the Amount of $150,660.00
, 980 F.2d 1200, 1206 (8th Cir. 1992); see also 
United States v. $121,100.00 in United States Currency
, 999 F.2d 1503, 1507-08 (11th Cir. 1993) (holding that, even at trial, the government, in order to establish probable cause, need not connect the currency to any particular drug transaction nor must its evidence point to drugs to the exclusion of all other theories of illegal activity). I would adopt this standard of review in Illinois, given the fact that this court has held that fact pleading does not require a plaintiff to meet, at the pleading stage, its ultimate burden of proof. 
Board of Education of the Kankakee School District No. III v. Kankakee Federation of Teachers, Local No. 886
, 46 Ill. 2d 439, 446 (1970) (acknowledging that a pleader is required to set out his or her evidence; only ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts). Applying the above principles to the case at bar, the State's complaint in this case must be viewed as factually sufficient.

Conclusion

My colleagues' decision evinces a misperception of the statutory nature of our civil drug forfeiture proceedings and a disregard of the judiciary's proper role in interpreting the statutes enacted by the legislature. Equally alarming, however, is the majority's utter willingness to dismiss a highly developed, uniform body of case law from across the country in order to adopt its own problematic and questionable resolution to the issues presented for our review. Therefore, unlike the majority, I would reverse the order of the circuit court striking Mena's answer to the State's complaint. Accordingly, I would also vacate the order and judgment of default in favor of the State and would remand the matter for further proceedings consistent with my analysis.

JUSTICE MILLER joins in this dissent.