NOTICE

Decision filed 04/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240885-U

NO. 5-24-0885

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE JAMIE CRANE TRUST DATED OCTOBER 17, 2001, AND RECONSTITUTED JULY 22, 2020; JOSEPH CUNNINGHAM; ALLYNE DASHER; LAURA RUST DIRKS; GALE GOBLE; BRETT HERMANN; KEN HERMANN; DAVID HETTINGER; JOHN KLEISS; WILLIAM LEISCHNER; MAPLE LAWN FARMS, LLC; MARCIA PENSE; LINDON RIDDLE; CATHERINE RUST; ELIZABETH RUST; DONALD SCHLESINGER; SUZAN L. SCHLESINGER; ANN RUST SULLIVAN; RUSSELL UTTERBACK; and ROGER WANTLAND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of De Witt County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 23-CH-6 |
| HEARTLAND PATHWAYS, an Illinois Not-for-Profit Corporation, | ) ) ) ) | Honorable Gary A. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice McHaney and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We reverse the trial court's judgment of default where plaintiffs' complaint was deficient in alleging the elements for a quiet title action.

¶ 2    Defendant, Heartland Pathways, appeals the trial court's May 20, 2024, default judgment and its July 31, 2024, order denying defendant's postjudgment motion requesting the court vacate

1

the default judgment. Heartland argues that the trial court's default judgment was contrary to law. For the following reasons, we reverse the trial court's order granting the default judgment.

¶ 3                                    I. BACKGROUND

¶ 4       On May 25, 2023, plaintiffs filed a complaint to quiet title against defendant, Heartland Pathways, an Illinois not-for-profit corporation. The plaintiffs included: the Jamie Crane Trust dated October 17, 2001, and reconstituted July 22, 2020; Joseph Cunningham; Allyne Dasher; Laura Rust Dirks; Gale Goble; Brett Hermann; Ken Hermann; David Hettinger; John Kleiss; William Leischner; Maple Lawn Farms, LLC; Marcia Pense; Lindon Riddle; Catherine Rust; Elizabeth Rust; Donald Schlesinger; Suzan L. Schlesinger; Ann Rust Sullivan; Russell Utterback; and Roger Wantland.

¶ 5       The complaint alleged that plaintiffs owned and operated farmland in De Witt and Piatt Counties which included the former Illinois Central Railroad Company (ICRC) right of way and involved title to the abandoned railroad right of way. They alleged that after using the rail for over 100 years, ICRC secured the right to abandon the right of way, and removed the rails, ties, and equipment in 1985. They further alleged that under the Federal Rails-to-Trails Act (codified as amended at 16 U.S.C. §§ 1241-51 (2024)) former railroad right of ways could be used to make trails if a certificate of interim use (Certificate) was obtained from the Interstate Commerce Commission (ICC). Plaintiffs claimed that the ICC denied Heartland's request for a Certificate in 1988 because it was filed too late. Thereafter, Heartland "purchased" the right of way from ICRC on December 15, 1988. Plaintiffs took issue with ICRC's alleged ownership as well as the legal description on the quitclaim deed. They further noted that Heartland never paid the real estate taxes on the premises described on the deed. They claimed that they were the owners of the property where the right of way existed and alleged they had continuously used the right of way for many

2

years to enter their crop fields and Heartland's lawyer had served cease and desist orders intermittently over the years although no walking path or trail was ever established. Plaintiffs claimed control and possession of the right of way since 1986 and sought a declaration that the abandoned property be vested in them. The petition was supported by, *inter alia*, deeds between ICRC and Heartland, and the ICC decision denying Heartland's requested certificate.

¶ 6    Summons was issued to Heartland's registered agent, Philip Hult, on May 25, 2023. On July 11, 2023, the summons was returned by the sheriff's office stating service was attempted on June 30, 2023, and defendant was not found. An alias summons was issued in care of the Illinois Secretary of State on July 11, 2023. On July 24, 2023, service was effected on the Illinois Secretary of State. After no responsive pleading was filed, plaintiffs moved for a default judgment on January 16, 2024.

¶ 7    On January 24, 2024, counsel for Heartland entered her appearance and moved to dismiss the complaint pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2022)), disputing plaintiffs' claim that ICRC had no property interest to devise to Heartland and arguing that plaintiffs' right to dispute the deed expired on March 18, 2009, pursuant to section 13-101 of the Code of Civil Procedure (735 ILCS 5/13-101 (West 2008)). It further moved to dismiss based on the lack of authority related to Jamie Crane's trust pursuant to section 816(24) of the Illinois Trust Code (760 ILCS 3/816(24) (West 2022)) and the lack of any deed related to Piatt County. The motion further argued that the complaint pled legal conclusions instead of fact, and plaintiffs' reliance on Goose Creek maps to show ownership when the deeds did not reflect the plaintiffs' title interests resulted in a deficient complaint. The motion to dismiss also claimed under section 2-615(a) that each of plaintiffs' interests had to be pled separately. Heartland also filed a response to the motion for default judgment, stating that counsel was retained, motions to

3

dismiss the complaint were filed, and requested the court deny the motion for default judgment. The motions for default were set for hearing on April 3, 2024.

¶ 8     On February 15, 2024, plaintiff, The Jamie Crane Trust, moved to substitute The Jamie Crane Trust for its trustee, Jamie Crane. On March 4, 2024, plaintiffs moved to strike the motions to dismiss pursuant to Illinois Supreme Court Rule 181 (eff. July 17, 2020) that requires motions for dismissal to be filed within 30 days of service, further noting that no motion for leave was filed pursuant to Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011).

¶ 9     On March 8, 2024, defendant moved for an extension of time pursuant to section 2-1007 of the Code of Civil Procedure (735 ILCS 5/2-1007 (West 2022)) and Rule 183 to ratify the combined motion to dismiss, noting that service on Philip Hult was not shown. The motion further indicated that it was not until June 2023 that Hult was first notified of this case, at which time neither Hult, nor his attorney in a De Witt County case, had been served with the complaint.

¶ 10     On March 19, 2024, plaintiffs filed a response indicating that their counsel emailed Heartland's counsel in a different case on July 14, 2023, a copy of the complaint and mailed a copy of the complaint and summons to Hult on July 20, 2023. They argued that despite their attempts to advise defendant of the pending case, as well as service via the Illinois Secretary of State effectuated on July 16, 2023, no response to the complaint was filed until seven months later and requested denial of the defendant's motion for extension of time.

¶ 11     A hearing was held on April 3, 2024. After hearing arguments, the trial court denied the motion for extension of time after finding good cause was not shown. It set the motion for default judgment for hearing on April 24, 2024. On April 10, 2024, the parties agreed to continue the hearing until May 15, 2024.

¶ 12    On April 15, 2024, plaintiffs moved to supplement the record with copies of certified mail cards related to service on Hult in July 2023. The evidence consisted of the receipt but did not include the green card.

¶ 13    On April 23, 2024, defendant filed a memorandum in response to plaintiffs' motion for default, stating the motion could not be granted because the underlying complaint failed to state a cause of action and did not meet the limitations period of section 13-101. In support, defendant cited *Suttles v. Vogel*, 126 Ill. 2d 186 (1988), which held that default judgment must be reversed when the complaint upon which judgment was premised failed to state a cause of action. Defendant also cited *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314 (1997), which reiterated the holding in *Suttles*, allowed a party to challenge the sufficiency of a complaint on appeal, and ultimately found the default judgment required reversal where the complaint was insufficient. *Id.* at 341. Heartland argued that section 13-101 required plaintiffs to bring the action within 20 years of the original deed between the railroad and Heartland, and therefore, the complaint was filed too late. It further argued that the complaint did not meet the requirements of section 13-102 of the Code of Civil Procedure (735 ILCS 5/13-102 (West 2022)).

¶ 14    The motion also argued that default judgment should not be granted because defendant had now entered its appearance, and its pleadings thereafter were timely and sought a determination on the merits. It further argued that it was challenging plaintiffs' substitute service, stating that "the 30 day time window for service was up when Deputy Griffin was going through the papers, and he marked not found/not served so that it could be sent to the Records Office for processing and return to court." It argued that substitute service was improper because that type of service was premised on whether a registered agent could "with reasonable diligence be found" and reasonable diligence was not shown since the sheriff's attempt at service did not occur until after

the summons expired. It argued that reasonable diligence was a burden on the plaintiff, and if substitute service was erroneous, the court did not have jurisdiction over defendant until January 24, 2024, when counsel entered her appearance, rendering the motions to dismiss timely and the motion for default moot.

¶ 15     Defendant further argued that the overriding consideration in deciding to enter or vacate a default judgment was achievement of substantial justice and argued that it had not contumaciously ignored the court as seen in some cases. It argued that the registered agent was merely ignorant of the relevance of the complaint and justice could not be achieved by causing defendant to lose property previously purchased in 1988 when meritorious defenses existed to the case including the statute of limitation, *laches*, payment of taxes, and other matters raised in the motion to dismiss. The motion further addressed the denial of its request for extension stating the court erroneously relied on Hult's knowledge of the claim because service was improper and good cause here was shown. In support, defendant cited *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334 (2007), and argued plaintiffs' counsel at the hearing misrepresented the case to state mistake, inadvertence, or attorney neglect could not be considered by the court in determining whether good cause exists, when it could.

¶ 16     On May 15, 2024, argument on the motion for default judgment and reconsideration of the motion for extension of time was presented. The reconsideration was addressed first and the judge denied admittance of evidence from the sheriff's office that revealed the deputy never attempted service on defendant. The court reasoned it was available at the time of the prior hearing and again found there was no good cause "shown by the Defendant for waiting so long to do what they did" and that it was "willful neglect" for defendant to ask his attorney about the case and follow his advice that they did not have to worry about it. After additional argument on the motion to

6

reconsider, during which the court noted that defendant never moved to quash the summons and instead entered a full appearance, the court stated:

> "I think under these facts there was valid substitute service, especially since I do not believe the Defendant raised that as an issue until very recently. There's not even a motion to quash that service, the substitute service, which should put then the burden on the Plaintiff to show that before they got substitute service reasonable efforts were made otherwise and, therefore, the Plaintiff is entitled to that default. And I'm granting that motion for default, having denied the motion to reconsider this or amend."

¶ 17    On May 17, 2024, plaintiffs filed a motion to supplement the record. Therein, it alleged that plaintiffs provided affidavits of title certifying they were the fee simple owners of land comprising the abandoned railroad right of way, they were in possession and that "no other person, corporation or entity exerts control or possession of the right of way." The motion further alleged that plaintiffs signed verifications for the underlying complaint's allegations and statements. Attached to the motion were affidavits of title and verifications executed by the following plaintiffs: Jamie Crane who listed the Jamie Crane Trust as the fee simple owner; Joseph Jay Cunningham stating the property was owned in fee simple by his father Joseph D. Cunningham until his death on April 21, 2020, and his father's will devised the property to him; Allyne Dasher listing Allyne Dasher, Bette Lou Terrell, and Beverly Cox as fee simple owners pursuant to a trustee's deed; Rodney Goble and Karen Goble listing themselves as fee simple owners; Kenneth Hermann listing K.C. Herm Land, LLC as the fee simple owner; David Hettinger listing David Hettinger and Jodi Lynn Hettinger as fee simple owners; John Kleiss listing John Kleiss and Mikia Kleiss as fee simple owners; William Leischner listing Vernelle Leischner, William Leischner,

7

and Scott Leischner as fee simple owners; Marcia Pense listing the Marcia Pense Trust as the fee simple owner pursuant to deed following the life estate of Jean Pense, now deceased; Lindon Riddle listing the Lindon Riddle and Rebecca Riddle Trust as the fee simple owner; an illegible signature listing Laura Rust Dirks, Catherine Rust, Elizabeth Rust, and Ann Rust Sullivan as owners of Rust Minch Farms, LLC which was the fee simple owner; Suzan L. Schlesinger, as trustee, listing the Suzan L. Schlesinger Trust as the fee simple owner; Russell Utterback listing the Russell Utterback Trust and Janice Utterback Trusts as the fee simple owners, and further noting that "he and his spouse were the owners as trustees of their respective trusts"; and Roger Wantland listing Roger Wantland, his spouse, Debra Wantland, and his brother-in-law, Harry J. Nichols, as the fee simple owners. Each affidavit alleged it was based on the "attached" deed, will, or trust. However, no deed, will, or trust was attached.

¶ 18    On May 20, 2024, the trial court issued an "order for quiet title." Therein, the court found that the summons was served on defendant as required by law and defendant was in default by failing to respond to the summons in a timely manner. The court further found that the deeds from ICRC to Heartland were ineffectual because ICRC only had an easement in gross which could only be transferred to another operating railroad. It stated that upon abandonment of a railroad right of way, the easement was extinguished and title vested in the owner abutting the tract. The court found that the affidavits of title established that plaintiffs were the owners. Therefore, the court ordered that defendant be defaulted and plaintiffs be fee simple owners in the abandoned right of way. Later that day, plaintiffs moved to supplement the record with an affidavit of title for Maple Lawn Farms, LLC, listing it as the fee simple owner of the property. The affidavit was signed by David Gay, the managing member of Maple Lawn Farms, LLC.

¶ 19    On June 6, 2024, defendant moved to vacate the default judgment, arguing that the default judgment did not conform to the plaintiffs' pleadings because the documents revealed that (1) some plaintiffs did not own land abutting defendant's property obtained from ICRC; (2) persons who were not parties to the proceeding were being awarded land; (3) the identification related to parcels of defendant's land was ambiguous; (4) the plaintiffs' parcels did not abut defendant's land; (5) portions of defendant's land were not pleaded or proved to be abandoned; and (6) no pleading or proof was presented that defendant owned the land in Piatt County. It further argued that because the complaint did not plead separate counts for each plaintiff, the failure of the pleadings was a failure to all, and default judgment could not stand. Attached to the motion were the differences in the names in the complaint and in the affidavits, as well as differences between the alleged land owned in the complaint and that set forth in the affidavits.

¶ 20    Defendant also filed a verified motion to stay enforcement of the judgment pending appeal due to a pending real estate sale involving Heartland, Illinois Department of Natural Resources (IDNR), and Friends of the Kickapoo Rail Trail for $610,000. The motion was supported by the real estate sales contract and documentation dated March 25, 1988, related to the original sale between the railroad and Heartland that revealed Heartland paid an additional $159,840 for the bridges over the waterways.

¶ 21    On July 2, 2024, plaintiffs filed a motion to strike defendant's pleadings, claiming the pleadings were merely a collateral attack on the court's default judgment and failed to show diligence and good cause for failure to plead. They further argued that defendant's window for appeal had already passed and defendant's factual arguments regarding the land's worth were irrelevant. They further contended that defendant's "lack of diligence disqualifies it from making a request to the court to vacate the judgment by default," arguing defendant never attempted to

9

refute plaintiffs' titles prior to the entry of default judgment and title based on recorded deeds were presumed valid. It also relied on Rule 183, claiming defendant failed to show good cause for an extension of time to plead the motion to vacate, willful violation of supreme court rules, and *laches*.

¶ 22    On July 17, 2024, defendant filed a reply arguing that plaintiffs failed to explain why this court should sustain a judgment in favor of new parties not named as plaintiffs or why parcels of land incorrectly identified the property. It argued that plaintiffs should have to name the correct legal owners, accurately describe the parcels of land they claim to own abutting the property and allege that the railroad abandoned the property, to plead and prove their case, regardless of whether defendant's actions were proper. It further argued that the plaintiffs' statements were flawed or misleading, explaining that a motion to strike only applied to the pleadings, no diligence requirement was necessary for filing a motion to vacate or a motion to stay, the time for filing an appeal had not expired, the real estate contract was related to the motion to stay, the case law was distinguishable, the arguments regarding defendant's appearance were contrary to law and untimely, *laches* did not apply, and an abandoned railroad right of way did not automatically revert to abutting landowners when the railroad owned the land in fee simple. Defendant also noted the complaint alleged that plaintiffs' claim that the railroad obtained the land by condemnation, and condemnation meant the railroad owned the land in fee simple.

¶ 23    The parties provided arguments on the motion to strike, motion to vacate, and motion to stay on July 31, 2024. All the motions were denied. As to the two latter motions, the court stated:

> "I've considered those written motions, replies, arguments contained—
> the oral arguments today. I do believe that I tend to side with the Plaintiffs'
> argument. I know I've heard this issue in other—in the other case as well, the
> arguments for this and against the adverse possession claim, which I did not find

were valid in that case, in the underlying cases that—the underlying facts we didn't get to. Nobody has a right to argue them when they're defaulted out.

The question really comes down to whether it's appropriate to stay enforcement because the order to quiet title is standing from my previous ruling on a motion earlier. I do agree with the fact that these Plaintiffs have this land that's been in limbo now for a while, these arguments, and should have the right to enjoy their property. And given the arguments and the lack of due diligence in this case, I don't think it would be appropriate to stay enforcement pending any appeal.

I guess we'll see if the appeal goes through or not, but that's a different issue. I—I've certainly heard your motions and that may allow for a stay to allow you to appeal. But I'm gonna deny the motion to stay."

¶ 24 Defendant filed its appeal on August 1, 2024, listing the May 20, 2024, and July 31, 2024, orders as the basis of the appeal.

¶ 25                                    II. ANALYSIS

¶ 26 Before we address the merits of the appeal, this court must note that plaintiffs filed a motion to dismiss the appeal prior to briefing the case. The motion was denied with leave to raise the argument in the briefs once the record on appeal was filed. No subsequent motion to dismiss was filed, and no argument related to a motion to dismiss was presented in the briefing. Accordingly, we find the issue forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***.").

¶ 27 Moving to the merits, defendant argues that the trial court's default judgment was both factually and legally unsound. Defendant further argues that the trial court's decisions to grant the

11

default judgment and deny its motion to vacate the default judgment were abuses of discretion. Plaintiffs disagree and request affirmation of the trial court's orders.

¶ 28    "[A] default judgment must be reversed when the complaint upon which that judgment is premised fails to state a cause of action." *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988) (citing *Roe v. Cook County*, 358 Ill. 568, 570 (1934); *Buck v. Citizens' Coal Mining Co.*, 254 Ill. 198, 202 (1912)). "[A] party is entitled to challenge the sufficiency of a complaint on appeal." *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 334 (1997). "A default admits only those material facts stated in the complaint ***." *Id.* "Pleadings serve to inform the court and the parties of the legal theories relied upon and to give notice of the factual issues which are to be tried." *Id.* at 335 (citing *Yeates v. Daily*, 13 Ill. 2d 510, 514 (1958)). While pleadings are liberally construed (see 735 ILCS 5/2-603(c) (West 2022)), "the allegations in a complaint must set forth facts that satisfy the elements necessary to support a cause of action." *$1,124,905 U.S. Currency*, 177 Ill. 2d at 335. "The sufficiency of a complaint is an issue of law" and reviewing courts consider the issue *de novo*. *Id.*

¶ 29                              A. The Statute of Limitations

¶ 30    Defendant first argues that the trial court's order granting default judgment and quieting title must be vacated due to legal infirmities associated with the complaint. This argument contends that plaintiffs' complaint is barred by the statute of limitations, pursuant to section 13-101 of the Code of Civil Procedure (735 ILCS 5/13-101 (West 2022)), since the deed between defendant and ICRC was filed over 20 years ago. Defendant further relies on *Suttles*, 126 Ill. 2d 186, and *$1,124,905 U.S. Currency*, 177 Ill. 2d 314, which held that default judgment must be reversed when the complaint upon which judgment was premised failed to state a cause of action. Plaintiffs respond citing *McNeil v. Ketchens*, 397 Ill. App. 3d 375 (2010), arguing that the 20-year period of

possession does not start until the title holder had a visible, objective reason to know that someone is trespassing.

¶ 31 We find plaintiffs' reliance on *McNeil* unwarranted. The language in *McNeil* on this issue is found in the adverse possession section of the case. *Id.* at 383-95. Adverse possession requires a party to prove the following five elements existed concurrently for 20 years: "(1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner." *Joiner v. Janssen*, 85 Ill. 2d 74, 81 (1981). Here, no claim of adverse possession was made by either party. The action is one to quiet title. Such action requires a plaintiff to establish title superior to that of defendants. *Dudley v. Neteler*, 392 Ill. App. 3d 140, 143 (2009). Accordingly, *McNeil* has no bearing on this case.

¶ 32 Regardless, defendant's statute of limitations claim is equally infirm. While *Suttles* and *$ 1,124,905 U.S. Currency* allow this court to consider the validity of an underlying complaint following the issuance of a default judgment, the decisions are based on the elements of the underlying action. See *Suttles*, 126 Ill. 2d at 194; *$1,124,905 U.S. Currency*, 177 Ill. 2d a 341. Here, defendant's argument is based on the statute of limitations.

¶ 33 A claim that the statute of limitations was not met is an affirmative defense, which must be pled and proven by the party asserting the claim. *Rajcan v. Donald Garvey & Associates, Ltd.*, 347 Ill. App. 3d 403, 410 (2004). Typically, an affirmative defense admits the sufficiency of the complaint but asserts a claim that avoids or defeats the claim. See 735 ILCS 5/2-619(a) (West 2022); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Further, it is well established that the right to invoke a statute of limitations defense can be expressly waived or waived by conduct inconsistent with the intent to enforce that right. See *Hassebrock v. Ceja Corp.*, 2015 IL App (5th) 140037, ¶ 38. Here, while the statute of limitations may have merit, the

13

affirmative defense must be set forth in the answer or reply to the complaint (see 735 ILCS 5/2-613(d) (West 2022)) or in a motion for involuntary dismissal (see *id.* § 2-619(5)). Here, no answer or reply was ever timely filed and the default judgment precluded defendant from obtaining relief for its motion to dismiss due to its failure to request leave prior to filing. Accordingly, any argument related to the statute of limitations is premature at this juncture of the proceedings.

¶ 34                                B. Legally and Factually Insufficient Complaint

¶ 35    Defendant also argues that plaintiffs' claim of ownership in the complaint based on condemnation is invalid. The argument is based on the Act to Incorporate the Havana, Lincoln & Champaign Railroad Company (HL&C) in force March 9, 1867, Private Laws of Illinois 1867, 25th General Assembly, convened January 7, 1867, and plaintiffs' allegations in the complaint that property originally stemmed from the HL&C. The parties agree that HL&C later changed its name to Havana, Mason City, Lincoln & Eastern Railway (HMCL&E). Section 10 of that 1867 Act stated that,

> "All rights of way and the real estate for the right of way and for the purposes aforesaid, purchased or acquired by said company, whether by mutual agreement or otherwise, or which shall become the property of said company by operation of law, as in this act provided, shall, upon the payment of the amount belonging to the owner or owners of said land, as a compensation for the same, become the property of said company in fee simple." § 10 (Act to Incorporate the Havana, Lincoln and Champaign Railroad Company (1867)).

Because the railroad held the property in fee simple, defendant argues that plaintiffs have no right of reversion following abandonment of that property.

¶ 36   As noted above, to prevail in an action to quiet title requires the plaintiff "must establish title superior to that of defendants." *Neteler*, 392 Ill. App. 3d at 143. Here, the complaint alleges that the railroad abandoned the right of way, and the property reverted back to the plaintiffs. While such reversion can occur (see *Schnabel v. County of Du Page*, 101 Ill. App. 3d 553, 558 (1981) (citing cases in agreement)), the pleading fails to allege how the railroad's title was obtained for each alleged property or how the title was passed to other railroad companies prior to ICRC's conveyance of the property to defendant.

¶ 37   *Schnabel* acknowledges two categories of right of way abandonment cases: "(1) those in which the interest of the railroad company was originally acquired by deed or conveyance and (2) those in which the railroad originally acquired its right-of-way easement through condemnation or eminent domain proceedings." *Id.* at 559. While *Schnabel* reverted the property under deed regardless of whether reverter language was found therein, case law is equivocal on whether condemnation results in a fee simple holding to the railroad (see *Marathon Oil Co. v. Heath*, 358 F.2d 34, 36-37 (7th Cir. 1966), relying on *Bartlow v. Chicago, Burlington & Quincy R.R. Co.*, 243 Ill. 332, 336 (1909), and *Keen v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 392 Ill. 362, 374 (1945)) or a reverter (see *Schnabel*, 101 Ill. App. 3d at 559).

¶ 38   Here, plaintiffs' complaint alleged that

"Havana, Lincoln & Champaign Railroad (HL&C) was incorporated on March 9, 1867, to construct and operate railroad tracks from Ipava, in Fulton County, Illinois, to the east through and including DeWitt County, Illinois. The right of way described in paragraph 3 above was secured by HL&C for that purpose."

Paragraph 3 contains the legal description to the right of way as shown on the deed from ICRC to defendant. While the deed includes the words railroad right of way in the property descriptions,

15

the deed does not indicate whether the original property obtained by HL&C that was transferred to ICRC was in fee simple, condemnation (which could go either way), or as a simple right of way with reverter.

¶ 39    Illinois is a fact-pleading state. *$1,124,905 U.S. Currency*, 177 Ill. 2d at 335. "[T]he allegations in a complaint must set forth facts that satisfy the elements necessary to support a cause of action." *Id.* (citing *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982)). This court will accept factual allegations as true in a default judgment action. See *id.* at 334. However, mere conclusions of law are not entitled to the same merit and therefore are not accepted as true in a default judgment proceeding. See *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 466 (2007) (citing *$1,124,905 U.S. Currency*, 177 Ill. 2d at 334).

¶ 40    Here, plaintiffs' complaint is vague and ambiguous as to how title was obtained by the railroad for each portion of the right a way along the disputed property. Nor is this deficiency remedied by the attachments as there is no copy of any deed from HL&C to HMCL&E, or from HMCL&E to ICRC that might reveal the railroad's legal claim to the property.

¶ 41    While the complaint alleged that "[t]he named Plaintiffs are the fee simple owner of all or a portion of the abandoned railroad right of way as shown on attached Group Exhibit 'C,' " the attachment does not clarify the plaintiffs' ownership rights of the subject property. No deeds supporting the plaintiffs' claims to the property were attached to the complaint. The insufficiency of the complaint becomes blatantly obvious based on the motion to supplement the record filed two days after the court orally granted the motion for default and three days before the written order for quiet title was issued. Notably, the record fails to reveal any ruling on the plaintiffs' May 17, 2024, motion to supplement, or the first supplemental motion to supplement the record filed after the order for quiet title was issued. Additionally, the affidavits of title—which were never

16

properly admitted into the record—only added to the confusion because the affidavits reveal that misnomer was rampant, named parties had no standing, and interested parties were unnamed as plaintiffs. Therefore, we find the complaint was factually lacking as to whether the named plaintiffs held good or true title to the property.

¶ 42　　Even if we could get beyond whether the named plaintiffs actually held good or true title to the property, the complaint was equally deficient in alleging that plaintiffs' title was superior to the ICRC/Heartland deed. While plaintiffs contend the ICRC/Heartland deed conveyed no actual property, the ICRC/Heartland deed is contained in the record and it conveyed all of ICRC's "right, title, interest and claim" in the listed property. We further note that plaintiffs' contentions regarding what property, if any, was conveyed are based on uncited and unsupported legal conclusions, which this court will not accept as factual. See *Universal Casualty Co.*, 376 Ill. App. 3d at 466 ("A default does not admit the *conclusions* in the complaint." (Emphasis in original.)).

¶ 43　　Essentially, plaintiffs are asking for the property conveyed in defendant's deed, which was recorded in the county recorder's office, to be set aside, with insufficient allegations of good or true title for their own property, and affidavits of title revealing misnomer, plaintiffs with no standing, and interested parties who were not included in the litigation. Further, the complaint contains no allegation that any plaintiff held a superior claim of title over defendant. As these elements are required for a quiet title claim, we hold that plaintiffs' complaint was deficient for failing to allege the actual plaintiffs that may have possessed good or true title and that the claimed title, whether legal or equitable, was superior to defendant. As such, we find it unnecessary to address defendant's remaining issues on appeal. Accordingly, we reverse the trial court's judgment of default, dismiss plaintiffs' complaint for failure to state a cause of action, and remand to allow plaintiffs to amend their complaint.

¶ 44                                    III. CONCLUSION

¶ 45    For the above-stated reasons, we reverse the trial court's judgment of default and remand

for further proceedings consistent with this order.


¶ 46    Reversed and remanded.